UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **GEORGE CLARK**, individually, and **KEVIN HARRINGTON**, individually; | Case No. 2:21-cv-10001 Hon. Victoria A. Roberts Mag. Judge Elizabeth A. Stafford |
| Plaintiffs, | |
| v. | |
| **ANTHONY ABDALLAH,** in his individual capacity; **KEVIN SMITH**, in his individual capacity; John Hermann, Personal Representative of the Estate of Gregory Hill, deceased, and **CITY OF INKSTER**, a Municipal corporation; jointly and severally, | |
| Defendants. | |

| | |
|---|---|
| **MUELLER LAW FIRM** By:    Wolfgang Mueller (P43728) *Attorneys for Plaintiffs* 41850 W. Eleven Mile Rd, Ste 101 Novi, MI 48375 P: (248) 489-9653 F: (248) 347-6630 E: wolf@wolfmuellerlaw.com | **SEWARD HENDERSON PLLC** By:    T. Joseph Seward (P35095)         Michael A. Knoblock (P77544) *Attorneys for Defendants Abdallah and Smith, only* 210 E. 3rd Street, Suite 212 Royal Oak, MI 48067 P: (248) 733-3580 F: (248) 733-3633 E: jseward@sewardhenderson.com mknoblock@sewardhenderson.com |
| **LAW OFFICES OF JOHN T. HERMANN** By:    John T. Hermann (P52858) *Attorneys for Defendant Estate of Hill* 2684 West Eleven Mile Road Berkley, MI 48072 P: (248) 591-9291 F: (248) 591-2304 E: hermannlawoffices@comcast.net | |

**ALLEN BROTHERS PLLC**
By:   David W. Jones (P57103)
       James M. Surowiec (P49560)
       Lindsey R. Johnson (P67081)
*Attorneys for Defendant Inkster, only*
401 N. Main Street
Royal Oak, MI 48067
P: (248) 951-0960
F: (248) 951-9191
E: djones@allenbrotherspllc.com
    jsurowiec@allenbrotherspllc.com
    ljohnson@allerbrotherspllc.com

---

### DEFENDANTS ANTHONY ABDALLAH AND KEVIN SMITH'S RESPONSE TO MOTION TO QUASH BY THE WAYNE COUNTY PROSECUTOR'S OFFICE

Defendants **ANTHONY ABDALLAH** and **KEVIN SMITH**, ("Defendants") by and through their undersigned counsel, submit the following as their Response to Motion to Quash by the Wayne County Prosecutor's Office (ECF No. 37). In support of their response, Defendants rely upon the attached brief.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

/s/ Michael A. Knoblock (P77544)
*Attorneys for Defendants Abdallah and Smith, only*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633

Dated:  January 10, 2022     E:mknoblock@sewardhenderson.com

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**GEORGE CLARK**, individually, and
**KEVIN HARRINGTON**, individually;

      Plaintiffs,

v.

**ANTHONY ABDALLAH,** in his individual
capacity; **KEVIN SMITH**, in his individual
capacity; John Hermann, Personal Representative
of the Estate of Gregory Hill, deceased, and
**CITY OF INKSTER**, a Municipal corporation;
jointly and severally,

      Defendants.

Case No. 2:21-cv-10001
Hon. Victoria A. Roberts
Mag. Judge Elizabeth A. Stafford

---

**MUELLER LAW FIRM**
By:   Wolfgang Mueller (P43728)
*Attorneys for Plaintiffs*
41850 W. Eleven Mile Rd, Ste 101
Novi, MI 48375
P: (248) 489-9653
F: (248) 347-6630
E: wolf@wolfmuellerlaw.com

**LAW OFFICES OF JOHN T. HERMANN**
By:   John T. Hermann (P52858)
*Attorneys for Defendant Estate of Hill*
2684 West Eleven Mile Road
Berkley, MI 48072
P: (248) 591-9291
F: (248) 591-2304
E: hermannlawoffices@comcast.net

**SEWARD HENDERSON PLLC**
By:   T. Joseph Seward (P35095)
       Michael A. Knoblock (P77544)
*Attorneys for Defendants Abdallah
and Smith, only*
210 E. 3rd Street, Suite 212
Royal Oak, MI 48067
P: (248) 733-3580
F: (248) 733-3633
E: jseward@sewardhenderson.com
mknoblock@sewardhenderson.com

**ALLEN BROTHERS PLLC**
By:    David W. Jones (P57103)
       James M. Surowiec (P49560)
       Lindsey R. Johnson (P67081)
*Attorneys for Defendant Inkster, only*
401 N. Main Street
Royal Oak, MI 48067
P: (248) 951-0960
F: (248) 951-9191
E: djones@allenbrotherspllc.com
   jsurowiec@allenbrotherspllc.com
   ljohnson@allerbrotherspllc.com

---

**BRIEF IN SUPPORT OF DEFENDANTS ANTHONY ABDALLAH AND KEVIN SMITH'S RESPONSE TO MOTION TO QUASH BY THE WAYNE COUNTY PROSECUTOR'S OFFICE**

## TABLE OF CONTENTS

QUESTIONS PRESENTED ............................................................. ii

MOST CONTROLLING AUTHORITIES ...................................... iii

INDEX OF AUTHORITIES ........................................................... iv

COUNTER STATEMENT OF FACTS ........................................... 1

STANDARD OF REVIEW .............................................................. 6

COUNTER ARGUMENT ................................................................ 7

I.   Defendants' Subpoena Seeks Discovery that is Relevant and Proportional to the Needs of This Case .......................................................... 7

a.  Law – Relevancy and Proportionality Factors Under Fed. R. Civ. P. 26 .................................................................................................. 7

b.  Analysis – The Information Sought by the Subpoena is Relevant and Proportional to the Needs of this Case .......................................... 8

II.   Defendants' Subpoena Places No Undue Burden on the Wayne County Prosecutor's Office ............................................................ 16

a.  Law – Undue Burden Under Fed. R. Civ. P. 45(d)(3)(A) ............. 16

b.  Analysis – The Wayne County Prosecutor's Office has Failed to Demonstrate Undue Burden .............................................................. 17

CONCLUSION .............................................................................. 20

i

## QUESTIONS PRESENTED

1. Whether the information Defendants' subpoena seeks is relevant and proportional to the needs of this case?

The defendants answer, *"Yes."*

The non-party prosecutor's office answers, *"No."*


2. Whether the prosecutor's office fails to meet its burden to demonstrate undue burden under Fed. R. Civ. P. 45(d)(3)?

The defendants answer, *"Yes."*

The non-party prosecutor's office answers, *"No."*

## MOST CONTROLLING AUTHORITIES

1. *Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980) and *United States v. Selby,* 33 F.3d 55 (6th Cir. 1994) for the position that the information Defendants' subpoena seeks is relevant and proportional to the needs of this case.

2. *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220 (E.D. Mich. 2016), *State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.*, No. 2:16-CV-13040, 2018 WL 3631984 (E.D. Mich. July 31, 2018), and *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-CV-11500, 2013 WL 1093687 (E.D. Mich. Nov. 26, 2013) for the position that the prosecutor's office fails to meet its burden to demonstrate undue burden under Fed. R. Civ. P. 45(d)(3).

## INDEX OF AUTHORITIES

**Cases**

*In re Domestic Drywall Antitrust Litig.*,
    300 F.R.D. 234 (E.D. Pa. 2014) ..............................................................................14

*In re: Mod. Plastics Corp.*,
    890 F.3d 244 (6th Cir. 2018)................................................................... 16, 17, 20

*Irons v. Karceski*,
    74 F.3d 1262 (D.C. Cir. 1995)................................................................................6

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)................................................................................................7

*Singleton v. City of New York*,
    632 F.2d 185 (2d Cir. 1980)....................................................................................9

*State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.*,
    No. 2:16-CV-13040, 2018 WL 3631984 (E.D. Mich. July 31, 2018)........ 14, 17, 20

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*,
    No. 12-CV-11500, 2013 WL 10572229 (E.D. Mich. Aug. 13, 2013).....................14

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*,
    No. 12-CV-11500, 2013 WL 10936871 (E.D. Mich. Nov. 26, 2013).............. 15, 20

*State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*,
    315 F.R.D. 220 (E.D. Mich. 2016).......................................................... 14, 17, 20

*United States v. Selby,*
    33 F.3d 55 (6th Cir. 1994)....................................................................................11

*United States v. Wells*,
   No. 06-10589, 2006 WL 3203905, at \*2 (E.D. Mich. Nov. 3, 2006) ...................6

**Rules**

Fed. R. Civ. P. 26(b)(1) ................................................................. 7, 8, 9, 13

Fed. R. Civ. P. 45(d)(3) .............................................................. 6, 16, 17

**Treatises**

Restatement (Second) of Torts § 658 (1977) ...............................................9

Restatement (Second) of Torts § 660, Comments a & b (1977)..................................9

## COUNTER STATEMENT OF FACTS

I.      <u>Facts Surrounding Plaintiffs' Convictions</u>

Plaintiffs Clark and Harrington were convicted of murdering Michael Martin in the City of Inkster in September 2002. A witness named Bearia Stewart implicated Clark and Harrington in the murder and later testified to what she saw at Mr. Clark's preliminary examination. [Exhibit 2 – Bearia Stewart's Preliminary Examination Testimony, pp. 13-24]. Ms. Stewart was threatened at the preliminary examination by someone in the gallery performing a throat-slitting gesture. [Ex. 2, pp. 37-38]. This threat, along with threats she received the night of the murder from Plaintiffs, caused Ms. Stewart to shut down. Her preliminary examination testimony was admitted as evidence and used to convict Clark and Harrington in their subsequent trials.

II.      <u>Facts Surrounding the Conviction Integrity Unit's Investigation into Clark and Harrington's Case</u>

Years after the convictions, Clark and Harrington made claims of innocence to the Wayne County Prosecutor's Office's Conviction Integrity Unit ("CIU"). This resulted in an approximately six-month long investigation by the Conviction Integrity Unit in 2019 and 2020. [Exhibit 3 – Press Release]. The investigation allegedly uncovered "new witnesses and evidence" in the case. [Ex. 3].

As a result of the CIU's investigation, the prosecutor's office stipulated to the dismissal of Plaintiffs' criminal convictions. [Exhibit 4 – Stipulated Order to Dismiss]. They were not re-tried because the CIU believed Ms. Stewart was coerced by Det. Abdallah. [Ex. 3]. Importantly, no conclusion was reached "regarding the actual innocence of Mr. Harrington and Mr. Clark." [Ex. 3]. Plaintiffs then filed this lawsuit, claiming fabrication of evidence, malicious prosecution, and *Brady* violations, along with a *Monell* claim. [ECF No. 27].

III.   <u>Valerie Newman's Deposition in this Case</u>

On October 27, 2021, defense counsel took the deposition of Valerie Newman in this case. [Exhibit 1 – Deposition of Valerie Newman]. Ms. Newman was deposed as the director of the Wayne County Prosecutor's Office's Conviction Integrity Unit. In her deposition, Ms. Newman testified that the CIU looks to evidence that was not considered by a trier of fact in the criminal proceedings that led to a conviction. [Ex. 1, pp. 24-25, ln. 23-25, 1-2]. This is to prevent the CIU from being the "13th juror" that reviews facts already presented to a jury. [Ex. 1, p. 27, ln. 12-19].

Defense counsel questioned Ms. Newman on what new objective evidence her office uncovered regarding Clark and Harrington's case, which had no physical evidence aside from the deceased and relied primarily on Ms. Stewart's testimony. [Ex. 1, p. 28, ln. 5-14; p. 29, ln. 1-25; p. 30, ln. 5-14; p. 32, ln. 3-18; p. 33, ln. 2-12, 16-25; pp. 35-36, ln. 20-24, 2-10; p. 37, ln. 13-19; p. 40, ln. 20-25; p. 41, ln. 1-10,

15-23; p. 42, ln. 4-20; p. 47, ln. 12-20; p. 51, ln. 1-17, 22; pp. 51-52, ln. 24-25, 1, 6, 8-12; pp. 52-53, ln. 18-25, 1-15; p. 58, ln. 7-20; p. 76, ln. 7-8, 15-25; p. 77, ln. 1-13].

Eventually, Ms. Newman conceded that there were no objective records that prove Clark or Harrington were not involved with the underlying homicide. [Ex. 1, p. 57, ln. 7-13]. Thus, defense counsel also questioned Ms. Newman regarding how she evaluated witnesses and determined whether one is more credible than the other. [Ex. 1, p. 60-61, ln. 9-25, 1-23; p. 62, ln. 1-10; p. 65, ln. 1-6; pp. 67-68, ln. 22-25, 1-8; p. 71, ln. 4-9; p. 72, ln. 3-21; pp. 81-82, ln. 24-25, 1-7, 16-25; p. 86-87, ln. 21-25, 1-6, 17-22].

It became evident through this questioning that the CIU's recommendation for relief, which formed the basis for the release of these Plaintiffs, is based upon Ms. Newman's subjective view of evidence and witness credibility determinations – all information that was available at the time of the original trials. In reality, the CIU is actually acting as "the 13th juror," and usurping the province of the jury in our criminal justice system.

At her deposition in this case, Ms. Newman was also asked if she contacted Det. Abdallah about this case. [Ex. 1, p. 90, ln. 12-14]. She alleged that Det. Abdallah refused to speak with the CIU, and such contact should be documented in the file. [Ex. 1, p. 90, ln. 10, 15-17]. However, no documents received by Defendants have

indicated such contact. Further, in the 31 cases that the CIU has granted relief, Ms. Newman claims her office has reached out to the officer in charge in just about every case. [Ex. 1, p. 138, ln. 12-15]. In those instances, "a lot of police officers" have allegedly come in to discuss their cases. [Ex. 1, p. 139, ln. 3-6].

Ms. Newman was questioned about reaching out to the prosecutor in this case during the CIU's investigation.  She did not think it was necessary to speak with the prosecutor about the alleged coercion of the case's main witness or what materials were obtained and reviewed, and what witnesses were talked to. [Ex. 1, p. 144, ln. 9-17; p. 91, ln. 13-21.  In fact, Ms. Newman stated that the CIU has "very rarely" spoken to trial prosecutors in the other matters where relief was recommended. [Ex. 1, p. 141, ln. 19-24]. The CIU has allegedly talked with trial prosecutors about the cases where relief has been recommended, but Ms. Newman could not articulate when. [Ex. 1, p. 141-142, ln. 24-25, 1-6].

During the deposition Ms. Newman indicated that the CIU does "victim notification in every case" where relief is being recommended. [Ex. 1, p. 108, ln. 12-21]. She could not recall who contacted the family of Michael Martin in this case, but like the other topics she was questioned on there "should be" documentation regarding it. [Ex. 1, p. 109, ln. 1-6].

IV.   Defendants' Subpoena Based on Ms. Newman's Testimony

Faced with this testimony, Defendants sent a subpoena to the Wayne County Prosecutor's Office after Ms. Newman's deposition. [Exhibit 6 – November 19, 2021, Subpoena with Attachment]. The purpose of this subpoena is to test Ms. Newman's deposition testimony and establish that the CIU's hollow investigation, did not result in a favorable termination for Plaintiffs.

The first category of the subpoena requests a list of all cases where the CIU has recommended relief to a criminal defendant along with the nature of the conviction and nature of relief granted. [Ex. 6]. Category two asks for communications and notifications informing victims that the CIU has decided to recommend relief for cases involving violent/assaultive offenses, along with communications the CIU has had with the prosecutor's office's Victim Service Unit in those cases. [Ex. 6].  Similarly, category three asks for the names, correspondence, and documentation for officers that were contacted in cases the CIU investigated involving allegations of police misconduct, along with any evidence that documents an officer was contacted and refused to come in for an interview. [Ex. 6]

Finally, category four asks for all communications from the CIU to trial prosecutors in cases where the CIU recommended relief, which request input regarding the conviction before a decision to grant relief is made. [Ex. 6]. Category five asks for materials specific to George Clark and Kevin Harrington, which the

Wayne County Prosecutor's Office has not objected to. [Ex. 6]. Each of these four disputed categories are based upon Ms. Newman's deposition testimony and are narrowly tailored to her deposition responses.

Despite these narrowly tailored requests that are relevant to Ms. Newman's credibility and bias, and whether Plaintiff's cases were favorably terminated, the Wayne County Prosecutor's Office filed a motion to quash the subpoena. [ECF No. 37, PageID.486-502]. Defendants now ask that this motion be denied.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 45(d)(3) requires the court to quash or modify a subpoena in certain circumstances and permits the court to do so within its discretion in other circumstances. Fed. R. Civ. P. 45(d)(3). The court is only required to quash or modify a subpoena when a timely motion is brought that shows the subpoena (1) does not allow enough time to comply, (2) makes a person go beyond the geographic limits in Rule 45(C), (3) requires disclosure of protected or privileged materials, or (4) subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). A party seeking to quash a subpoena bears "a heavy burden of proof" to show that the materials requested under the subpoena are not relevant or would subject a party to undue burden. *United States v. Wells*, No. 06-10589, 2006 WL 3203905, at *2 (E.D. Mich. Nov. 3, 2006) [Exhibit 5 - *United States v. Wells*] (citing *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995)).

**COUNTER ARGUMENT**

## I. Defendants' Subpoena Seeks Discovery that is Relevant and Proportional to the Needs of This Case

### a. Law – Relevancy and Proportionality Factors Under Fed. R. Civ. P. 26

Rule 26 defines the scope of discovery and allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Fed. R. Civ. P. 26(b)(1). Our Supreme Court construes this scope "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). This "is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Id.* (citation omitted). Moreover, it is not "limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Id.*

Rule 26 provides six criteria a court and parties must consider in determining whether materials are relevant and proportional to the needs of the case:

(1) the importance of the issues at stake in the action,

(2) the amount in controversy,

(3) the parties' relative access to relevant information,

(4) the parties' resources,

7

(5) the importance of the discovery in resolving the issues,

(6) and whether the burden or expense of the proposed discovery outweighs its likely

benefit.

Fed. R. Civ. P. 26(b)(1).

The factors were moved and restated in an amendment to Rule 26 in 2015. *Id.*
Believing previous amendments had softened the importance of considering these
factors, the Advisory Committee wrote that this change was made to "reinforce[] the
Rule 26(g) obligation of the parties to consider these factors in making discovery
requests, responses, or objections." *Id.* The committee further noted that not all factors
had to be considered in making a determination of discoverability. *Id.*

b. <u>Analysis – The Information Sought by the Subpoena is Relevant and
Proportional to the Needs of this Case</u>

The information sought by Defendants' subpoena – materials directly related to
Ms. Newman's deposition testimony and the sufficiency of her investigation – is both
relevant and proportional to the needs of this case. When the applicable factors are
applied, clearly the subpoena is within the scope of what is relevant and proportional to
the needs of this case.

i. <u>The Issues are Important and the Discovery Sought is Relevant to those
Issues.</u>

Under the first factor, "the importance of the issues at stake in the action" must
be considered. Fed. R. Civ. P. 26(b)(1). Here, Plaintiffs are claiming that Defendants

Abdallah and Smith engaged in corrupt behavior to manufacture a murder case against them. These are serious allegations that attack the character and morality of these officers. Having all the information necessary for them to prepare for and defend against these baseless accusations is imperative to this case. This is particularly true as it relates to Ms. Newman and the CIU's investigation of this matter – which formed the underlying basis for Plaintiffs' relief in the criminal matters.

In this case, Plaintiffs have alleged that Defendants Abdallah and Smith maliciously prosecuted them. [ECF No. 27, PageID.340-341]. They allege this claim "became complete" when the murder charges against them were dismissed on April 21, 2020. [ECF No. 27, PageID.341, ¶105]. "Under the common law, however, it is well-settled that an accused, in order to maintain a cause of action for malicious prosecution, must establish that the state prosecution terminated in his favor." *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980) (citing Restatement (Second) of Torts § 658 (1977)). This requires more than a simple dismissal of charges, and criminal proceedings "are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." *Id.* (citing Restatement (Second) of Torts § 660, Comments a & b (1977)).

The underlying investigation by Ms. Newman and the CIU serves as the sole basis for the dismissal of Plaintiffs' charges and their release. Accordingly, Defendants will need to present evidence to the jury that this investigation was hollow and relied

merely on Ms. Newman's subjective evaluation of evidence that was already known at the time of the criminal trials. This will allow Defendants to effectively argue that the dismissal of the criminal charges and Plaintiffs' subsequent release, based solely on the sham investigation by the CIU and Ms. Newman, were not terminated in their favor.

In its motion, the prosecutor's office proposes that nothing from the CIU's investigation should be admissible – but this leaves Defendants at a severe disadvantage. The jury will be presented with the fact that Plaintiffs were released from prison and the charges against them dismissed. If Defendants are not allowed to present evidence regarding the CIU's slanted investigation, they are left with nothing to argue against Plaintiffs' assertion that their criminal proceedings were terminated favorably.

This makes the first category of Defendants' subpoena relevant. In that category, Defendants request a list of cases where the CIU has recommended relief along with the nature of the conviction and relief granted. This will allow Defendants to identify particular cases and look for a pattern in the CIU's investigations and how it favors the use of evaluating subjective evidence that was already available at the time of criminal trials – just like in this case. With the broad purview of discovery and the serious nature of the allegations of this case, this request is both important and relevant.

With the importance of Ms. Newman's investigation placed squarely into the merits of this case, the ability to impeach her credibility or show bias becomes equally important. Generally, evidence that attacks a witnesses' credibility and shows bias

toward a particular party is both relevant and admissible. *See e.g. United States v. Selby,* 33 F.3d 55 (6th Cir. 1994) (where documentary evidence shows a witness engaged in particular actions, evidence relevant and admissible as to credibility and bias where witness claimed to not recall or remember taking those actions). Each of the other categories in Defendants' subpoena bear directly on Ms. Newman's credibility and bias, like the *Selby* case.

First, during the deposition Ms. Newman indicated that the CIU notifies the victim in every case where relief is being recommended. She could not recall who contacted the family of the victim in this case, but she stated there "should be" documentation regarding it in the CIU's file. Citing this testimony, category two in Defendants' subpoena asks for communications and notifications informing victims that the CIU has decided to recommend relief for cases involving violent/assaultive offenses, along with communications the CIU has had with the prosecutor's office's Victim Service Unit in those cases. [Ex. 6]. This request relates directly to Ms. Newman's credibility and will reveal whether her testimony regarding victim notification is in fact true. It will also demonstrate any bias she may have toward criminal defendants over crime victims. Thus, it is relevant.

Ms. Newman also testified that Det. Abdallah refused to speak with her regarding this case and that such contact should be documented in the file. She further stated that her office has reached out to the officer in charge in just about every case

11

where relief has been recommended, and a lot of officers have come in to discuss their cases in the past. Citing Ms. Newman's testimony, category three of the subpoena asks for the names, correspondence, and documentation for officers that were contacted in cases the CIU investigated involving allegations of police misconduct, along with any evidence that documents an officer was contacted and refused to come in for an interview. [Ex. 6]. This request bears directly on Ms. Newman's credibility as to whether she actually attempted to contact Det. Abdallah or other officers in her investigations, and whether any bias exists as to Det. Abdallah or law enforcement officers generally. Thus, it is relevant.

Finally, Ms. Newman testified that she thought it unnecessary to contact the trial prosecutor in this case regarding alleged witness coercion or what materials were obtained and reviewed, and what witnesses were talked to. Ms. Newman stated that although the CIU "very rarely" spoke with trial prosecutors in other matters where relief was recommended, there were instances when that occurred. However, she could not articulate when.

This is where category four of Defendants' subpoena comes into play, which asks for all communications from the CIU to trial prosecutors in cases where the CIU recommended relief that request input regarding the conviction before a decision to grant relief is made. [Ex. 6]. This information will test Ms. Newman's veracity as it relates to contact with trial prosecutors – if any such contact actually exists. It will also

help show Ms. Newman's bias such that through her investigations, she not only routinely ignores the officers in charge of investigating the cases, but the prosecutors that try them.

Each category of Defendants' subpoena that the Wayne County Prosecutor's Office objects to is relevant to important issues in this case. **This factor weighs in favor of disclosure.**

### ii. The Only Source for this Information is the Wayne County Prosecutor's Office

The next applicable factor to consider in this case is the parties' relative access to relevant information. Fed. R. Civ. P. 26(b)(1). The access to any records reflecting the actions taken by Ms. Newman and the CIU in this investigation and the investigation of other cases lies solely with the Wayne County Prosecutor's Office. Defendants, and the public as a whole, should be able to pull back the curtain to see what is truly taking place at the Conviction Integrity Unit. **This factor weighs in favor of disclosure.**

### iii. The Discovery Sought is of Consequence in Resolving the Issues in this Case

As discussed above, the materials requested by Defendants are relevant to both the favorable termination requirement for Plaintiffs' malicious prosecution claim and Ms. Newman's credibility and bias. Thus, the materials sought will resolve those issues in this case. **This factor weighs in favor of disclosure.**

13

iv. <u>The Benefit of the Proposed Discovery Outweighs any Burden</u>

In its motion, the Wayne County Prosecutor's Office claims that it is unduly burdened by Defendants' subpoena because

> the process assembling information from dozens of other completed and unrelated CIU investigations conducted since the formation of the unit in 2018 would require an extraordinary amount of time and effort.  The significant amount of documents from these matters would have to be located, closely reviewed, and redacted (if necessary).

However, to claim undue burden, the prosecutor's office must show "a clearly defined and serious injury." *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 224 (E.D. Mich. 2016) (citing *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014); *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-CV-11500, 2013 WL 10572229, at *3 (E.D. Mich. Aug. 13, 2013)).

An alleged "clearly defined and serious injury" must be supported through affidavits or other evidence.  *State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.*, No. 2:16-CV-13040, 2018 WL 3631984, at *2 (E.D. Mich. July 31, 2018) [Exhibit 7 - *State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.*] (citations omitted). In its motion, the prosecutor's office concludes that it will be injured by having to spend time and effort in having to locate, review and redact information, "if necessary." Nowhere does the prosecutor's office support these conclusions with any evidence such

14

as affidavits, and thus it has not met its burden. The "if necessary" language included in its position only lends credence to the injury's speculative nature.

Moreover, "any requirement for a third-party to comply with a subpoena will generate some burden in time and expense." *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-CV-11500, 2013 WL 10936871, at *14 (E.D. Mich. Nov. 26, 2013) [Exhibit 9 - *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*]. Here, Defendants narrowly tailored their requests based upon specific responses Ms. Newman gave at her deposition. They are also narrowed by their language. For example, category two is limited to "cases involving violent/assaultive offenses where the CIU recommended the grant of relief." [Ex. 6]. Category three is limited to "cases involving any CIU investigation of a criminal conviction based on allegations of police misconduct." [Ex. 6]. And finally, category four is limited to cases "where the CIU recommended the grant of relief to a convicted criminal defendant." [Ex. 6]. With this narrow request for information, no evidentiary support for burden from the prosecutor's office, and the importance of these issues, any burden outweighs the benefit of this information.

In its motion, the prosecutor's office also makes a perfunctory argument that documents responsive to the subpoena "may include" privileged information. [ECF No. 37, PageID.501-502]. Although the prosecutor's office fails to identify any specific privilege or privileged materials, Defendants assume this include the memorandum Ms.

Newman prepared for her recommendation to Wayne County Prosecutor Kym Worthy. However, in another case, the prosecutor's office released a similar memorandum to defense counsel. [Exhibit 8 – Newman Deposition Transcript from Chancellor Case, pp. 20-22]. Thus, the prosecutor's office cannot now claim they are burdened by releasing the memorandum in this case. **This factor weighs in favor of disclosure.**

Clearly, each factor weighs in favor of the discovery being both relevant and proportional to the needs of this case, and the Wayne County Prosecutor's Office's motion to quash should be denied.

## II.   Defendants' Subpoena Places No Undue Burden on the Wayne County Prosecutor's Office

### a.   Law – Undue Burden Under Fed. R. Civ. P. 45(d)(3)(A)

Fed. R. Civ. P. 45(d)(3)(A)(iv) requires the Court to quash a subpoena that "subjects a person to undue burden."  This Court assesses undue burden "in a case-specific manner considering such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (internal quotation marks and citations omitted). As indicated above, the prosecutor's office must show "a clearly defined and serious injury" supported by affidavits or other evidence to demonstrate undue burden. *Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. at 224 (citations

16

omitted); *Elite Health Centers, Inc.*, No. 2:16-CV-13040, 2018 WL 3631984, at *2 (citations omitted).

     b.   <u>Analysis – The Wayne County Prosecutor's Office has Failed to Demonstrate Undue Burden</u>

Looking to the factors identified in *In re: Mod. Plastics Corp.*, clearly the prosecutor's office has not met its "heavy burden" in demonstrating undue burden under Fed. R. Civ. P. 45(d)(3) (A). As such, its motion should be denied.

     i.   <u>The Materials are Relevant</u>

Under the first factor, the relevance of the information requested is considered. As discussed at length above, Defendants need to present evidence that Ms. Newman's perfunctory investigation through the CIU relied merely on her subjective evaluation of evidence that was already known at the time of the criminal trials. This is necessary to show that the dismissal of the charges against Plaintiffs, based solely on Ms. Newman's investigation, was not a favorable termination – a necessary element for Plaintiffs' malicious prosecution claim. Thus, the sufficiency of the CIU's investigation is integral to the issues in this case, and discovery surrounding it is necessary.

Moreover, the specific categories of information requested in the subpoena are all based directly on Ms. Newman's deposition testimony. These materials are necessary to determine Ms. Newman's credibility and any bias she may have toward criminal defendants and law enforcement officers. There truly is only one reason for

17

the prosecutor's office not wanting to release this information – it does not want the public to see the arbitrary manner in which the CIU investigates cases and makes recommendations for relief, such as releasing murderers into the public at large with no real evidentiary basis. **This factor weighs in favor of no undue burden.**

> ii. <u>Defendants Need to Obtain this Information from the Prosecutor's Office</u>

Along with the need identified through Defendants' relevancy arguments, there is another need to obtain this information directly from the prosecutor's office. That reason is simple – the prosecutor's office is the only source of this information. **This factor weighs in favor of no undue burden.**

> iii. <u>The Request is Limited in Both Breadth and Time</u>

As discussed above, category two in the subpoena is limited to "cases involving violent/assaultive offenses where the CIU recommended the grant of relief." [Ex. 6]. Category three is limited to "cases involving any CIU investigation of a criminal conviction based on allegations of police misconduct." [Ex. 6]. And finally, category four is limited to cases "where the CIU recommended the grant of relief to a convicted criminal defendant." [Ex. 6]. These requests are limited in breadth and based solely on the specific testimony provided by Ms. Newman in her deposition.

Moreover, Ms. Newman testified that the CIU has recommended relief in 31 cases. Thus, the materials responsive to categories two and four involve gathering

information from only 31 cases. Category two is further limited by only cases involving violent/assaultive offenses. As the prosecutor's office indicates in its motion, the CIU was formed in 2018. Since that time, Ms. Newman approximates that her office has investigated about 200 cases for possible relief. [Ex. 1, p. 162, ln. 16-20]. Thus, category three is limited to only 200 cases, and is further limited to only cases involving allegations of wrongdoing on the part of police. **This factor weighs in favor of no undue burden.**

### iv.  The Materials Requested are Described with Particularity

As indicated for the third factor, each category of requested information is narrowly tailored to be responsive to answers that Ms. Newman gave at her deposition. Moreover, the categories contain discrete subparts that describe specifically what information is being sought. This helps to limit the time and effort the prosecutor's office cites as a burden in locating these documents. **This factor weighs in favor of no undue burden.**

### v.  The Prosecutor's Office has Failed to Demonstrate an Undue Burden

In its motion, the prosecutor's office merely states that it "would require an extraordinary amount of time and effort" to produce these materials because they "would have to be located, closely reviewed, and redacted (if necessary)." [ECF No. 37, PageID.501]. However, no evidence is attached to the motion to support such a conclusion. As *Warren Chiropractic & Rehab Clinic, P.C.*, and *Elite Health Centers,*

*Inc.*, make clear, the failure to provide such support serves as a basis for denying a motion to quash citing undue burden.

Moreover, as discussed in the relevancy and proportionality argument above, "any requirement for a third-party to comply with a subpoena will generate some burden in time and expense." *Physiomatrix, Inc.*, No. 12-CV-11500, 2013 WL 10936871, at *14. Categories two and four in the subpoena involve gathering information from only 31 cases, and category two is further limited by only cases involving violent/assaultive offenses. Category three is limited to only 200 cases and is also further limited to only cases involving allegations of wrongdoing on the part of police. These narrow and precise requests simply do not demonstrate that an "extraordinary amount of time and effort" will be needed to locate these materials. **This factor weighs in favor of no undue burden.**

Each of the factors from *In re: Mod. Plastics Corp.* weigh in favor of finding no undue burden in producing the materials requested by the subpoena. As such, the prosecutor's office's motion should be denied.

## CONCLUSION

The Wayne County Prosecutor's Office's Conviction Integrity Unit claims to look at new evidence and witnesses in already-decided criminal cases and make recommendations for relief based on those witnesses and evidence – preventing it from being a "13th juror." However, it is clear from the investigation of the criminal

convictions underlying this case that the CIU is just that – it makes credibility determinations based on subjective evidence that was available throughout the criminal process. Defendants need to conduct discovery regarding the CIU's practices to show that the investigation that formed the basis for Plaintiffs' release from prison does not point to Plaintiffs being exonerated. Moreover, discovery regarding Ms. Newman's credibility and bias is necessary for Defendants to fully defend this case. As such, the information sought by Defendants is relevant and not unduly burdensome, and the prosecutor's office's motion to quash should be denied.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

 /s/ Michael A. Knoblock (P77544)
*Attorneys for Defendants Abdallah and Smith, only*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
Dated:   January 10, 2022          E:mknoblock@sewardhenderson.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing and this Certificate of Service with the Clerk of the Court, using the Court's E-filing system that will send notification to all counsel of record, on **January 10, 2022.**

/s/ Michael A. Knoblock
**SEWARD HENDERSON PLLC**

21