UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE CLARK, individually, and
KEVIN HARRINGTON, individually;

      Plaintiffs,

v.

ANTHONY ABDALLAH, in his individual
capacity; KEVIN SMITH, in his individual
capacity; John Hermann, Personal Representative
of the Estate of Gregory Hill, deceased, and
CITY OF INKSTER, a Municipal corporation;
jointly and severally,

      Defendants.

Case No.: 2:21-cv-10001
Hon. Victoria A. Roberts
Mag. Judge Elizabeth Stafford

---

**DEFENDANT CITY OF INKSTER'S ANSWER TO PLAINTIFFS'
SECOND AMENDED COMPLAINT, AFFIRMATIVE DEFENSES
AND RELIANCE ON JURY DEMAND**

NOW COMES Defendant, City of Inkster ("Inkster" or "City"), by and through its attorneys, Schenk & Bruetsch, PLC, and hereby submits the following in response to Plaintiffs' Second Amended Complaint:

1. This is an action for damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution against Defendants, ANTHONY ABDALLAH, ("ABDALLAH"), in his individual capacity; John Hermann, Personal Representative of the Estate of GREGORY HILL, deceased, ("HILL"); KEVIN SMITH ("SMITH"), in his

1

individual capacity; and CITY OF INKSTER ("INKSTER"), a municipal corporation.

**ANSWER: In response to Paragraph 1 of Plaintiffs' Second Amended Complaint, Defendant admits only that Plaintiff failed a 42 USC 1983 action against the city and defendants' officers under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Defendant denies any liability to Plaintiffs, and further denies that Plaintiffs are entitled to damages from the City.**

2. Jurisdiction is founded upon 28 U.S.C. § 1331.

**ANSWER: In response to Paragraph 2 of Plaintiffs' Second Amended Complaint, Defendant admits the allegation as true.**

3. Venue is proper based on the situs of the incident, which occurred in the CITY OF INKSTER. 28 U.S.C. § 1391.

**ANSWER: In response to Paragraph 3 of Plaintiffs' Second Amended Complaint, Defendant does not dispute venue.**

## GENERAL ALLEGATIONS

4. At all pertinent times Plaintiff, George Clark, was a United States citizen.

**ANSWER: In response to Paragraph 4 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or**

information sufficient to form a belief about the truth or falsity of the allegations contained therein.

5. At all pertinent times Plaintiff, Kevin Harrington, was a United States citizen.

**ANSWER: In response to Paragraph 5 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

6. At all pertinent times Defendant, ABDALLAH, was employed as a Sergeant by the INKSTER Police Department ("IPD"), a department of Defendant, INKSTER, and was acting within the scope of his employment and under color of law.

**ANSWER: In response to Paragraph 6 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

7. At all pertinent times, Defendant, SMITH, was employed as Sergeant by the INKSTER Police Department ("IDP"), a department of Defendant, INKSTER, and was acting within the scope of his employment and under color of law.

**ANSWER: In response to Paragraph 7 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or**

information sufficient to form a belief about the truth or falsity of the allegations contained therein.

8.   At all pertinent times Defendant, HILL, was employed as a Sergent by the INKSTER Police Department ("IPD"), a department of Defendant, INKSTER, and was acting within the scope of his employment and under color of law.

**<u>ANSWER:</u> In response to Paragraph 8 of Plaintiffs' Second Amended Complaint, Defendant admits only that all relevant times in the Complaint Defendant Hill was employed with Inkster Police Department as a Sergeant. Defendant denies any knowledge of allegations made by Plaintiffs wherein Defendant Hill suppressed Brady and/or exculpatory evidence in this matter. Answering further, Defendant stats that an act of suppressing Brady and/or exculpatory evidence would be deemed by the Defendant City as an ultra vires act. Defendant further denies that such conduct alleged against Defendant Hill by the Plaintiffs would be considered "under the color of law."**

9.   ABDALLAH, HILL, and SMITH, as sworn police officers, had taken an oath, the Law Enforcement Code of Ethics, that states in pertinent part: *"As a sworn police officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice."*

4

**ANSWER: In response to Paragraph 9 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

10. Defendant, INKSTER, at all relevant times, was a municipal corporation organized under the laws of the State of Michigan.

**ANSWER: In response to Paragraph 10 of Plaintiffs' Second Amended Complaint, Defendant admits the allegation as true.**

## GENERAL ALLEGATIONS

11.     At approximately 11:00 a.m., on September 27, 2002, a boy passing out church fliers discovered the body of Inkster resident Michael Martin at the edge of a wooded area near Henry Ruff Rd., south of Michigan Ave., in Inkster.

**ANSWER: In response to Paragraph 11 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

12.     The boy flagged down a woman, Bearia Stewart, who was getting into her car.  He informed Ms. Stewart of his discovery.  Ms. Stewart then called 911.

**ANSWER: In response to Paragraph 12 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or**

information sufficient to form a belief about the truth or falsity of the allegations contained therein.

13.      Detectives from the Inkster Police Department, including Officer-in-Charge, ANTHONY ABDALLAH, responded to the scene and began to investigate.

**ANSWER: In response to Paragraph 13 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

14.      Inkster detectives Paul Martin interviewed Ms. Stewart, who told him she saw the victim with a man named "Man-Pie" between noon and 3:00 p.m., the previous day.

**ANSWER: In response to Paragraph 14 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

15.      Ms. Stewart, despite not being involved in any way in the crime, was taken to the Inkster Police department where she was read her constitutional rights and interrogated for over five hours by Defendants, ABDALLAH and SMITH.  She was not allowed to leave.

**ANSWER: In response to Paragraph 15 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

16.     Ms. Stewart advised ABDALLAH and SMITH that she suffered from mental illness and could not read or write.

**ANSWER: In response to Paragraph 16 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

17.     During the course of the interrogation, ABDALLAH and SMITH repeatedly threatened to have Stewart arrested for lying to them because she denied knowing anything about the crime a minimum of 23 times.  ABDALLAH further threatened to call Social Services to take away her two young children because she was going to be arrested.

**ANSWER: In response to Paragraph 17 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

18.     ABDALLAH repeatedly told Ms. Stewart he could tell from her body language that she was scared and suggested to her that Man-pie had already threatened her.

**ANSWER: In response to Paragraph 18 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

19.     ABDALLAH apparently learned the body language interpretation from the debunked, infamous Reid Technique of Interviewing and Interrogation.

**ANSWER: In response to Paragraph 19 of Plaintiffs' Second Amended Complaint, Defendant denies that the "Reid Technique of Interviewing and Interrogation is "debunked" or "infamous."   In response to the remaining allegations, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

20.     ABDALLAH would later admit he could not tell from his Reid Technique training if Ms. Stewart's body language suggested she was scared or simply lying.

**ANSWER: In response to Paragraph 20 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or**

information sufficient to form a belief about the truth or falsity of the allegations contained therein.

21.     In the face of these intimidation and coercion tactics, Stewart, who feared losing custody of her two children, made up a story about having witnessed events at approximately 11:00 to 11:30 p.m., the prior evening.

**ANSWER:** **In response to Paragraph 21 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

22.     Stewart's story included Plaintiffs beating up Michael Martin, then dragging him to the woods where they presumably shot him to death.  Clark and Harrington then purportedly came back to Stewart's house and threatened to kill her if she told anyone what she witnessed.

**ANSWER:** **In response to Paragraph 22 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

23.     Neither ABDALLAH nor SMITH interviewed while watching the other threaten and coerce Stweart into fabricating a story implicating Plaintiffs in Michael Martin's murder.

9

**ANSWER:** In response to Paragraph 23 of Plaintiffs' Second Amended Complaint, Defendant denies any allegations of coercion.  In response to the remaining allegations, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.

24.     The content of Stewart's fabricated story, the direct result of ABDALLAH and SMITH putting the proverbial gun in her head, became the <u>sole basis</u> for probable cause for Plaintiffs' arrest and continued detention, as there was <u>no other evidence</u> linking them to the crime.  Plaintiffs were bound over for trial based on Stewart's fabricated testimony at the Preliminary Exam and ABDALLAH's false statements under oath.

**ANSWER:** In response to Paragraph 24 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.

25.     ABDALLAH and SMITH deliberately chose not to tell the prosecutor that Stewart's story was made up and a product of ABDALLAH and SMITH'S threats and coercion.

**ANSWER:** In response to Paragraph 25 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or

information sufficient to form a belief about the truth or falsity of the allegations contained therein.

26.     ABDALLAH deliberately chose not to disclose in his Investigator's Report that there was a cassette and videotape made that included his threats to have Ms. Stewart arrested and lose custody of her children.

**ANSWER: In response to Paragraph 26 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

27.     Clark was seized at his house on September 28, 2002.  He was taken to the Inkster Police department where he was interrogated by ABDALLAH.

**ANSWER: In response to Paragraph 27 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

28.     ABDALLAH told Clark he knew Clark did not commit the murder, but that Clark knew who was the perpetrator.  When Clark told ABDALLAH that he didn't know anything and wasn't going to do ABDALLAH's job, ABDALLAH told Plaintiff, *"Then I'm going to say it was you and you killed him over drug money."*

**ANSWER:** **In response to Paragraph 28 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

29.     On September 30, Tyronda Moore went to the IPD and spoke to ABDALLAH.   She told the detective that they had arrested the wrong person because she was with George Clark throughout the night of September 26-27.

**ANSWER:** **In response to Paragraph 29 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

30.     ABDALLAH accused Moore of lying and had her arrested without probable cause and put into jail for 2-3 days without ever charging her with a crime. He told her she *"needed to change her story."*

**ANSWER:** **In response to Paragraph 30 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

31.     ABDALLAH submitted his Investigator's Report/Warrant Request to the Prosecutor's Office on or after September 30, 2002.  His investigator's report

included, at a minimum, the following false statements or omissions of material facts to manufacture probable cause:

- That Ms. Stewart stated Man-Pie and K-Dog (nicknames for George Clark and Kevin Harrington, respectively), beat up and killed Michael Martin. ABDALLAH did not include that Ms. Stewart repeatedly said she knew nothing about the crime and that she made up the story only after being threatened with arrest and Social Services taking her children away from her.

- That the last time Ms. Stewart saw Clark with the victim was between noon and 3:00 p.m., on September 26, the day before the murder.

- ABDALLAH chose not to disclose that Ms. Stewart advised him that she suffered from "mental illness."

**ANSWER: In response to Paragraph 31 a-c of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

32.    But for Ms. Stewart's fabricated statement, the result of ABDALLAH and SMITH's threats and coercion, there would have been no probable cause for Plaintiffs' arrests.

**ANSWER: In response to Paragraph 32 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

33.     The warrant prosecutor did no independent investigation into the case and, instead, relied on the false statements contained within the Investigator's Report.

**ANSWER: In response to Paragraph 33 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

34.     On October 2, 2002, the warrant prosecutor recommended criminal charged be filed against Plaintiffs for the murder of Michael Martin.

**ANSWER: In response to Paragraph 34 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

35.     ABDALLAH swore to facts in support of the warrant, which was signed by Judge Sylvia James on October 3, 2002.

**ANSWER: In response to Paragraph 35 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

36.     Clark was arraigned on October 3, 2002.

**ANSWER: In response to Paragraph 36 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

37.     Harrington was arrested on October 19, 2002, in Ann Arbor as he stepped off a bus from Albuquerque, New Mexico, where he had been visiting a friend since August.

**ANSWER: In response to Paragraph 37 of Plaintiffs' Second Amended Complaint, Defendant admits that he was arrested on October 19, 2002. Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

38.     ABDALLAH knowingly and deliberately made false statements and omitted material facts which he and any reasonable officer would know that a magistrate judge would want to know before approving arrest warrants for murder.

**ANSWER: In response to Paragraph 38 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

39.     ABDALLAH knew that probable cause was lacking for the arrest, as he and SMITH threatened and coerced Bearia Stewart into making up a fabricated statement implicating Plaintiffs in the murder.

**ANSWER: In response to Paragraph 39 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

40.     ABDALLAH knew that absent Ms. Stewart's fabricated statement, probable cause was lacking for Plaintiffs' arrest because there was no evidence linking them to Michael Martin's murder.

**ANSWER: In response to Paragraph 40 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

41.     ABDALLAH knew that there was no physical evidence or eyewitness evidence linking Plaintiffs to the murder.

**ANSWER: In response to Paragraph 41 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

16

42.     Within days of the murder and following word that George Clark had been arrested, Kameka Jackson told her father, Gregory Hill, a Lieutenant for the Inkster Police Department, that she has witnessed a *"6 foot 1 black, dark skinned male"* man walking toward the woods with Michael Martin with a handgun in Martin's back.  Shortly thereafter, she heard several gunshots and saw the same man run past without Michael Martin.

**ANSWER:  In response to Paragraph 42 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

43.     Jackson told Hill that she knew George Clark and that Clark was not the man she saw with Martin immediately before the murder.

**ANSWER:  In response to Paragraph 43 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

44.     Hill told Jackson to keep quiet and not to say anything to anyone for her own safety and that he would "take care of it."

**ANSWER:  In response to Paragraph 44 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or**

**information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

45.     Hill was part of the Command Staff of the IPD and was aware of the investigation into the Martin murder.  He was also aware that George Clark had been arrested.

**ANSWER: In response to Paragraph 45 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

46.     Hill, in accordance with chain of command for criminal investigations in a paramilitary organization like IPD, told the OIC, ABDALLAH, what Jackson told him.

**ANSWER: In response to Paragraph 46 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

47.     Neither HILL nor ABDALLAH wrote a memo or report about the exculpatory evidence and neither man told a prosecutor about the evidence at any time before Clark and Harrington were convicted by a jury on February 11, 2003.

**ANSWER:** **In response to Paragraph 47 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

48.     The evidence from Kaneka Jackson was exculpatory evidence as to both Plaintiffs and was impeachment evidence as to the fabricated story being told by Bearia Stewart.  It would have been apparent *Brady/Giglio* evidence to any responsibly trained officer.

**ANSWER:** **In response to Paragraph 48 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

49.     The Preliminary Exam for George Clark took place on October 23, 2002.  Kevin Harrington's Preliminary Exam took place on October 30, 2002. Bearia Stewart testified at both hearings and was the sole witness to establish probable cause in each hearing.

**ANSWER:** **In response to Paragraph 49 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

50.    Ms. Stewart, afraid of the police and coerced by ABDALLAH'S and SMITH'S threats and illegal tactics, testified at Plaintiffs' Preliminary Examinations that Michael Martin was on his back porch at his unit, approximately five doors down from Ms. Stewart in the Parkside complex, when Clark, whom she knew as "Man-pie," drove up in a vehicle with another man she knew as "K-Dog."

**ANSWER: In response to Paragraph 50 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

51.    Ms. Stewart testified that Clark and Martin were arguing about money Martin owed Clark for drugs.  The two men began fighting.  Clark then went back to the car and he and "K-Dog" returned to Martin's apartment where they both began beating on Mr. Martin.  They dragged Mr. Martin into a nearby field and Ms. Stewart retreated into her apartment.  As she was entering her apartment, she heard three or four gunshots coming from the field where Man-Pie and K-Dog had allegedly dragged Martin.

**ANSWER: In response to Paragraph 51 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

52.     Ms. Stewart further testified that Man-Pie and K-Dog returned to her apartment and knocked on her door.  K-Dog threatened that if Ms. Stewart told anyone what she saw they would kill her.  She also testified that K-Dog had a gun with him when the two men knocked on her apartment door.

**ANSWER: In response to Paragraph 52 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

53.     Based on Ms. Stewart's fabricated testimony and ABDALLAH's false statements, Plaintiffs' cases were bound over to Circuit Court for trial.

**ANSWER: In response to Paragraph 53 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

54.     Plaintiffs' murder trial began on January 29, 2003.

**ANSWER: In response to Paragraph 54 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

55.     At trial, Ms. Stewart claimed not to remember anything.  The trial court deemed Ms. Stewart "unavailable" and allowed her Preliminary Exam transcript to be read to the jury.

**ANSWER: In response to Paragraph 55 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

56.     ABDALLAH knew that Stewart's testimony was false because he and SMITH manufactured it with their threats and coercive tactics.

**ANSWER: In response to Paragraph 56 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

57.     ABDALLAH, sitting at counsel's table with the prosecutor, made no effort to correct the false testimony.

**ANSWER: In response to Paragraph 57 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

58.     Bearia Stewart's testimony was the centerpiece of the State's case, <u>since she was the only witness to place Plaintiffs at the scene of the murder with Michael Martin and there was no other evidence implicating either Plaintiff</u>.  The prosecutor stressed Stewart's testimony in his opening statement and closing argument.

**ANSWER:** **In response to Paragraph 58 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

59.     During the course of the case and before trial, Ms. Tammy Wiseman, a friend of Bearia Stewart, was arrested for retain fraud in the City of Taylor.  It was approximately her 13th such arrest.

**ANSWER:** **In response to Paragraph 59 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

60.     ABDALLAH was contacted by the Taylor Police Department and promised to help Ms. Wiseman with her criminal case in Taylor.

**ANSWER:** **In response to Paragraph 60 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or**

information sufficient to form a belief about the truth or falsity of the allegations contained therein.

61.     ABDALLAH convinced Ms. Wiseman to write a report and later testify at trial that Plaintiff's lawyer and the lawyer for co-defendant, Kevin Harrington, asked her to lie at trial and testify that she was with Bearia Stewart at Ms. Wiseman's house on the night of the murder and that Ms. Stewart could not, and did not, witness anything having to do with the murder.

**ANSWER: In response to Paragraph 61 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

62.     Ms. Wiseman also testified that she was asked by the Defendants' lawyers to testify that Ms. Stewart told her Stewart was promised money, housing, and protection by the Inkster Police detectives for her testimony.

**ANSWER: In response to Paragraph 62 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

63.     Following her written statement, Ms. Wiseman was driven home by an Inkster police officer instead of being driven back to the Taylor Police Department.

**ANSWER:** **In response to Paragraph 63 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

64.     Ms. Wiseman's fabricated statement and testimony given to the Wayne County Prosecutor's Office, as well as her testimony at trial, was the result of promises made by ABDALLAH to help secure Plaintiffs' convictions.

**ANSWER:** **In response to Paragraph 64 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

65.     ABDALLAH did not tell the prosecutor that he secured the false testimony by promising Ms. Wiseman help with her criminal case in Taylor.

**ANSWER:** **In response to Paragraph 65 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

66.     ABDALLAH knew that testimony accusing Plaintiffs and their lawyers of attempting to suborn perjury would be devastating to the chances of an acquittal.

**ANSWER:** In response to Paragraph 66 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.

67.     On February 11, 2003, a Wayne County Circuit Court jury convicted Plaintiffs of the first-degree murder of Michael Martin.

**ANSWER:** In response to Paragraph 67 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.

68.     On February 25, 2003, George Clark was given a life sentence without the possibility of parole.

**ANSWER:** In response to Paragraph 68 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.

69.     On March 25, 2003, Kevin Harrington was given a life sentence without the possibility of parole.

**ANSWER:** In response to Paragraph 69 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or

information sufficient to form a belief about the truth or falsity of the allegations contained therein.

70.     Based on Ms. Stewart's testimony in Kevin Harrington's fourth trial[1], on January 20, 2006, a Wayne County Circuit Court jury convicted Harrington of the first-degree murder of Michael Martin.

**ANSWER: In response to Paragraph 70 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

71.     On February 15, 2006, Kevin Harrinton was given a life sentence without the possibility of parole. *Id*.  He had already spent almost three-and-one-half years wrongfully imprisoned by the time of his conviction and sentencing in the fourth trial.

**ANSWER: In response to Paragraph 71 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

---

[1] Kevin Harrington's conviction in his first trial was vacated due to attorney misconduct.  Ms. Stewart recanted her previous testimony in Harrington's subsequent trials. His second and third trails resulted in hung juries and mistrials. He was finally convicted in his fourth trial.

72.     There was no physical evidence linking Plaintiffs to the murder.

**ANSWER: In response to Paragraph 72 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

73.     There was no forensic evidence linking Plaintiffs to the murder.

**ANSWER: In response to Paragraph 73 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

74.     There were no confessions.

**ANSWER: In response to Paragraph 74 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

75.     There was only the testimony of the alleged eyewitness, Ms. Stewart, whose testimony was fabricated because of the threats and coercion from ABDALLAH and SMITH.

**ANSWER: In response to Paragraph 75 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or**

information sufficient to form a belief about the truth or falsity of the allegations contained therein.

## POST-TRIAL DEVELOPMENTS

76.     Ms. Stewart has since recanted her testimony provided in *People v. George Clark*, Case. No.02-013661, and *People v. Kevin Harrington*, Case No. 02-013495.

**ANSWER: In response to Paragraph 76 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

77.     Ms. Stewart has sworn, via affidavit on May 4, 2003, that she was coerced and threated by Inkster Detectives ABDALLAH and SMITH into implicating Plaintiff and Harrington.  *"Before my taped interview, Officers Abdallah and Smith had threatened me with keeping me in custody over the weekend, sending me to jail and taking my children away from me… I had been so intimidated by the two police officers that I made up the story I provided to them."* (Stewart affidavit, 05-04-03, ¶¶ 7-8).

**ANSWER: In response to Paragraph 77 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or**

information sufficient to form a belief about the truth or falsity of the allegations contained therein.

78.     Ms. Stewart has further states under oath: *"I had not been truthful with the Third Circuit Court judge or the jury when [I made] false and misleading statements and omissions upon the Circuit Court record which was used to convict both Mr. Kevin Harrington and George Clark, because I had been so intimidated by Officer Abdallah and Smith's actions towards me that I made up the story I provided to them. I tried to come clean but they told me if I changed my story, I'd be trading placed with Mr. Harrington and Mr. Clark.* (Stweart affidavit, 03-18-13, ¶ 5).

**ANSWER: In response to Paragraph 78 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

79.     Ms. Stewart further swore: *"This act was committed out of fear because I was told that if I did not help them put both Mr. Clark and Mr. Harrington away, they would lock me up and tie me in with the murder of Michael Martin as an accomplice right along side Mr. Clark and Mr. Harrington. They also promised they would start the process to take away my children, place them in foster care and make sure I lose all my parental rights..."* (Stewart affidavit, 03-18-13. ¶ 8).

**ANSWER:** **In response to Paragraph 79 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

80.     Ms. Stewart was the only witness who linked Plaintiff to Mr. Martin's murder.

**ANSWER:** **In response to Paragraph 80 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

81.     Following years of unsuccessful appeals, George Clark was able to successfully petition for a writ of habeas corpus after discovering a witness, Kaneka Jackson, who provided an affidavit stating that on the night of the murder, she was taking out her mother's trash at the Parkside apartments when she saw Mr. Martin struggling with a 6'1" dark-skinned black male with a silver handgun.  The unknown black make was taking Mr. Martin into the woods near the apartments.  As Ms. Jackson returned to her mother's apartment, she heard three gunshots coming from the woods.  She testified consistent with her affidavit at the bond hearing in federal court on February 20, 2019.

**ANSWER:** In response to Paragraph 81 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.

82.     Newly-discovered evidence from Clark and Harrington's new lawyers and the Wayne County Prosecutor's Office Conviction Integrity Unity ("CIU") investigation that was not presented at Plaintiffs' trials included Ms. Jackson's evidence.  This evidence was never provided to the Assistant Prosecuting attorney of defense counsel, in violation of *Brady v Maryland*.

**ANSWER:** In response to Paragraph 82 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.

83.     As a result of the newly-discovered evidence, the CIU submitted the case to Wayne County Prosecutor, Kym Worthy.  Prosecutor Worthy agreed to vacate Clark's conviction and dismiss criminal charges.

**ANSWER:** In response to Paragraph 83 of Plaintiffs' Second Amended Complaint, can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.

84.     On April 9, 2020, George Clark was released from prison on bond pending a decision by the Wayne County Prosecutor to dismiss the criminal charges against him.

**ANSWER: In response to Paragraph 84 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

85.     George Clark's criminal case was dismissed on April 21, 2020.

**ANSWER: In response to Paragraph 85 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

86.     As a result of the newly-discovered evidence uncovered by the University of Michigan Innocence Clinic, the CIU submitted Kevin Harrington's case to Wayne County Prosecutor, Kym Worthy. Prosecutor Worthy agreed to vacate the conviction and dismiss criminal charges.

**ANSWER: In response to Paragraph 86 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

87.     On April 21, 2020, Kevin Harrinton was released from prison.

**ANSWER: In response to Paragraph 87 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

88.     From the date of George Clark's arrest, on or about October 3, 2002, to the dismissal of criminal charges, on April 21, 2020, George Clark spent **6,411 days** illegally detained or imprisoned, **a total of 17 years, 6 months, and 19 days**.

**ANSWER: In response to Paragraph 88 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

89.     From the date of Kevin Harrington's arrest, on or about October 20, 2002, to the dismissal of criminal charges, on April 21, 2020, Kevin Harrington spent **6,394 days** illegally detained or imprisoned, **a total of 17 years, 6 months, and 2 days**.

**ANSWER: In response to Paragraph 89 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

## INKSTER POLICIES, CUSTOMS, AND LACK OF TRAINING

90.    Prior to the date of Plaintiffs' respective convictions, no IPD officers or detectives had any training in the proper handling and reporting of exculpatory and/or impeachment evidence, or the requirements of candor and honesty when submitting reports to prosecutors or magistrates in support of warrants or when testifying in support of a probable case finding.

**ANSWER: In response to Paragraph 90 of Plaintiffs' Second Amended Complaint, Defendant denies the allegation as untrue.**

91.    On or before September 26, 2002, INKSTER, by and through its final policymakers, had a custom to authorize, condone, tolerate and approve illegal and unconstitutional actions by INKSTER Police Department officers and command staff.

**ANSWER: In response to Paragraph 91 of Plaintiffs' Second Amended Complaint, Defendant denies the allegation as untrue.**

92.    The illegal and unconstitutional actional and practices included but were not limited to:

> a. Knowingly and deliberately fabricating evidence in interrogations to manufacture probable cause to support an arrest and conviction;
>
> b. Knowingly ratifying and not disciplining detectives who had previously been found to have fabricated evidence or made false statements and/or material omissions to support a search or arrest warrant; and

    c. Failing to train officers in the proper methods of obtaining evidence and being candid and honest in search warrant affidavits and testimony before judges in hearing to determine probable cause, and the handling of exculpatory evidence, all of which were standard, everyday functions for officers in the IPD; and

    d. Other acts that will become evidence during discovery.

**ANSWER: In response to Paragraph 92 a-d of Plaintiffs' Second Amended Complaint, Defendant denies the allegations as untrue.**

93.    INKSTER's customs and policies, set forth above, demonstrate deliberate indifference to the constitutional rights of its citizens, including Plaintiffs.

**ANSWER: In response to Paragraph 93 of Plaintiffs' Second Amended Complaint, Defendant denies that it has customs and polices as outlined above. In response to the remaining allegations, Defendant denies the allegations because they are untrue.**

94.    The policies, customs, and practices of Defendant, INKSTER; i.e., *"Monell"* violations, set forth herein, were the moving force behind the individual Defendants' constitutional violations.

**ANSWER: In response to Paragraph 94 of Plaintiffs' Second Amended Complaint, Defendant denies that it has customs and polices as outlined above. In response to the remaining allegations, Defendant denies the allegations because they are untrue.**

95.     INKSTER's *Monell* violations were a direct and proximate cause of Plaintiffs' injuries and damages, as they caused the individual defendants to think they could act with impunity, given the unwritten policy and custom of tolerance for fabrication of evidence, lies, half-truths, deliberate or reckless omissions of material facts supporting arrest warrant affidavits to manufacture probable cause for an arrest, and deliberate concealment of material *"Brady/Giglio"* evidence from the prosecutor.

**ANSWER: In response to Paragraph 95 of Plaintiffs' Second Amended Complaint, Defendant denies the allegations in this paragraph because they are untrue.**

96.     The individual defendants' misconduct, and the policies and customs of INKSTER, as set forth below, were a direct and proximate cause of Plaintiffs' injuries and damages, including:

    a.  Suffering a deprivation of liberty by being wrongfully incarcerated and imprisoned for a period of over seventeen and one-half years;

    b.  Severe emotional distress for the period from their arrest to the present, including, but not limited to: the emotional distress of being charges with murder, facing a sentence of life in prison without the possibility of parole; and being wrongfully convicted of crimes the Defendants knew they did not commit.

    c.  Physical manifestation of emotional distress including, but not limited to, sleeplessness, irritability, loss of appetite, headaches, and other symptoms;

d. Fright, shock, indignity, humiliation, outrage, and embarrassment of being wrongfully charged and imprisoned for murder;

e. Loss of enjoyment of daily activities;

f. Not being able to attend the funerals of several family members and loss or relationship;

g. Physical injuries suffered in prison;

h. Loss of employment and educational opportunities, past income, and future earning capacity;

i. Restricted and/or complete loss of all forms of personal freedom and physical liberties, including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, personal fulfillment, sexual activity, family relations, recreational activities, and personal expression;

j. Many of Plaintiffs' injuries and damages are likely to be permanent;

k. Other damages which may be revealed through discovery.

**ANSWER: In response to Paragraph 96 a-k of Plaintiffs' Second Amended Complaint, Defendant denies all allegations because they are untrue.**

### COUNT I
### 4TH AND 14TH AMENDMENT "FABRICATION OF EVIDENCE" BY DEFENDANTS ABDALLAH AND SMITH

97.     Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

**ANSWER: In response to Paragraph 97 of Plaintiffs' Second Amended Complaint, Defendant incorporates by reference the above responses as if fully stated in the following section of the Second Amended Answer.**

98.     At all times, Plaintiffs has a constitutional right, secured by the 4th and 14th Amendments, not to be seized and deprived of liberty as a result of fabrication of evidence by a government officer acting in an investigative capacity. *See Jackson v. City of Cleveland*, 925 F.3d 793, 816 (6th Cir. 2019) ("[F]abricated evidence that 'is used as the basis for a criminal charge' can form the basis for a § 1983 claim because, absent that evidence, there would have been no jury.") (citing *Hasley v. Pfeiffer*, 750 F.3d 273, 294 n. 19 (3rd Cir. 2014)).

**ANSWER:** **In response to Paragraph 98 of Plaintiffs' Second Amended Complaint, Defendant admits only that the US Constitution through the Fourth Amendment guarantees the right of the people to secure in their persons, houses, papers and effects, against un reasonable searches and seizures, shall not be violated, and no warrants shall be issued, but upon probable cause, supports by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. Defendant can neither admit nor deny the remaining allegations as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

99.     Plaintiffs' constitutional right to be free from arrest and prosecution based upon fabrication of evidence by a police officer acting in a governmental capacity to manufacture probable cause for an arrest was clearly established before

September 27, 2002, the earliest possible date of police misconduct. *Jackson*, 925 F.3d at 825 (6th Cir. 2019) (fabrication of evidence claim clearly established in 1975).

**ANSWER: In response to Paragraph 99 of Plaintiffs' Second Amended Complaint, Defendant admits that the fabrication of evidence by police, if proved, would violate clearly established law, however, Defendant can neither admit nor deny the remaining allegations as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

100.    ABDALLAH and SMITH deliberately and knowingly fabricated evidence to manufacture probable cause for an arrest warrant and to later secure Plaintiffs' convictions.  Their fabrication included threatening and coercing Bearia Stewart into falsely implicating Plaintiffs to avoid losing custody of her children, and illegally arresting, jailing, threatening Tyronda Moore so she would not appear at trial as an alibi witness for George Clark and, by extension, Kevin Harrington, and fabricating Tammy Wiseman's testimony.

**ANSWER: In response to Paragraph 100 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

## COUNT II
## 4TH AND 14TH AMENDMENT MALICIOUS
## PROSECUTION BY DEFENDANTS ABDALLAH AND SMITH

101.    Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

**ANSWER: In response to Paragraph 101 of Plaintiffs' Second Amended Complaint, Defendant incorporates by reference the above responses as if fully stated in the following section of the Second Amended Answer.**

102.    At all times, Plaintiffs had a constitutional right, secured by the 4th and 14th Amendments, not to be seized and deprived of liberty as a result of fabrication of evidence and knowingly or recklessly-made false statements or material omissions by a police officer in order to manufacture probable cause.

**ANSWER: In response to Paragraph 102 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

103.    Defendants, ABDALLAH and SMITH, influenced or participated in the initiation of criminal prosecution and continued detention when they deliberately and knowingly fabricated evidence in the interrogation of Bearia Stewart, which was material to a finding of probable cause and Plaintiffs' ultimate convictions.

41

**ANSWER:** **In response to Paragraph 103 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

104.    But for Defendants' fabrication of evidence and deliberate false statements and material omissions in his police report, probable cause would have been lacking; such conduct constituting a claim of federal "malicious prosecution" under the 4th Amendment. *Mills v. Barnard*, 869 F.3d 472, 480 (6th Cir. 2019) ("The prototypical case of malicious prosecution involved an official who fabricates evidence that leads to the wrongful arrest or indictment of an innocent person").  *See also Franks v. Delaware*, 428 U.S. 154; 98 S. Ct. 267; 457 L.Ed.2d 667 (1978).

**ANSWER:** **In response to Paragraph 104 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

105.    Plaintiffs' cause of action for federal malicious prosecution became complete when criminal charges were dismissed on April 21, 2020.

**ANSWER:** **In response to Paragraph 105 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or**

**information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

106.    Plaintiffs' constitutional right to be free from illegal seizure and continued detention without probable cause based upon fabrication of evidence and false statements or material omissions by a government officer acting in an investigative capacity in order to manufacture probable cause was clearly established before September 27, 2002, the earliest possible date for police misconduct.  See *Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019).

**ANSWER: In response to Paragraph 106 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

### COUNT III
### "BRADY" VIOLATIONS BY
### DEFENDANTS ABDALLAH, SMITH AND HILL

107.    Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

**ANSWER: In response to Paragraph 107 of Plaintiffs' Second Amended Complaint, Defendant incorporates by reference the above responses as if fully stated in the following section of the Second Amended Answer.**

108.   At all times, Plaintiffs had constitutional right of due process, guaranteed by the 14th Amendment, and the right to a fair trial under the 6th Amendment, to be free from police officers not disclosing to the prosecutor material exculpatory and/or impeachment (*"Brady/Giglio"*) evidence.

**ANSWER: In response to Paragraph 108 of Plaintiffs' Second Amended Complaint, Defendant generally admits the statements of law set forth in this paragraph.  However, Defendant can neither admit nor deny the remaining allegations as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

109.   Defendants, ABDALLAH, SMITH, and HILL, knowingly violated their respective unwavering legal duty (*"Brady"* duty) to disclose to the prosecutors all material evidence where its exculpatory and impeachment value was apparent, by failing to tell the prosecutor the following:

   a.   The fact that he and Smith had illegally jailed and threatened Tyronda Moore to make sure she did not testify as an alibi witness for George Clark;

   b.   The fact that Det. Hill had relayed information from his stepdaughter, Kaneka Jackson, that she had seen the shooter and George Clark was not involved in the murder.

   c.   The fact that he fabricated Tammy Wiseman's testimony by helping her with her criminal case in the City of Taylor and not disclosing the fabrication;

   d.   Other exculpatory and impeachment evidence that will be revealed during discovery.

**ANSWER:** **In response to Paragraph 109 a-d of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

110.     ABDALLAH, SMITH, and HILL's deliberate and knowing failures to disclose the above-referenced evidence to the prosecutor resulted in material exculpatory and impeachment evidence not being turned over to Plaintiffs' defenses counsel, in violation of the State's *Brady* obligations.

**ANSWER:** **In response to Paragraph 110 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

111.     ABDALLAH, SMITH, and HILL's *Brady* violations resulted in Plaintiffs not receiving a fair trial, described as "a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434, (1995).  Had ABDALAH disclosed the *Brady* evidence, there would have been no arrest, much less a conviction.  A re-trial that included the *Brady* evidence would result in a direct verdict or acquittal.

**ANSWER:** **In response to Paragraph 111 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or**

**information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

112. The *Brady* evidence cited above would have been apparent to any reasonable officer acting in good faith.

**ANSWER: In response to Paragraph 112 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

113. Plaintiffs' right to be provided with material exculpatory and impeachment evidence (*"Brady"* evidence), was clearly established before September 27, 2002, the earliest possible date for ABDALLAH's misconduct. *See Moldowan v. City of Warren*, 578 F.3d. 351, 382 (6th Cir. 2009) ("In fact, at least three circuit recognized prior to August 1990, the earliest possible date for Detective Ingles' involvement in the case, that this right was clearly established.")

**ANSWER: In response to Paragraph 113 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

## COUNT IV
## DEFENDANT, CITY OF INKSTER'S *"MONELL"* LIABILITY

114.     Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

**ANSWER: In response to Paragraph 114 of Plaintiffs' Second Amended Complaint, Defendant incorporates by reference the above responses as if fully stated in the following section of the Second Amended Answer.**

115.     Defendant, INKSTER, created policies, practices, and customs, as set forth above, which demonstrate "deliberate indifference" to the constitutional rights of its citizens, and was the moving force behind the individual Defendants' violations of Plaintiffs' constitutional rights.

**ANSWER: In response to Paragraph 115 of Plaintiffs' Second Amended Complaint, Defendant denies that it has customs and polices as outlined above. In response to the remaining allegations, Defendant denies the allegations because they are untrue.**

116.     As a direct and proximate result of the individual Defendants' willful violation of Plaintiffs' constitutionally-protected rights, George Clark and Kevin Harrinton were seized without probable cause, charged with crimes they did not commit, wrongfully convicted and deprived of their liberty, causing them to suffer the injuries and damages set forth above.

**ANSWER: In response to Paragraph 116 of Plaintiffs' Second Amended Complaint, Defendant denies that it has customs and polices as outlined above. In response to the remaining allegations, Defendant denies the allegations because they are untrue.**

## COUNT V
## STATE LAW MALICIOUS PROSECUTION BY DEFENDANTS ABDALLAH, SMITH, AND HILL

117.    Plaintiffs incorporate by reference each preceding paragraph as if fully stated herein.

**ANSWER: In response to Paragraph 117 of Plaintiffs' Second Amended Complaint, Defendant incorporates by reference the above responses as if fully stated in the following section of the Second Amended Answer.**

118.    The underlying criminal proceedings against Plaintiffs ultimately terminated in their favor with a dismissal of the changes in state court on April 21, 2020.

**ANSWER: In response to Paragraph 118 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

119.    The criminal investigation and prosecution were undertaken without probable cause or good faith, and with malice.  They were not undertaken with the

intension of bringing Plaintiffs to justice for having committed the alleged murder. Instead, the individual Defendants acted to frame Plaintiffs for the murder of Michael Martin.  The individual Defendants knowingly coerced Bearia Stewart's fabricated "identification" of Plaintiffs as the perpetrators, despite ABDALLAH and SMITH both knowing that Stewart did not see the crime occur.  HILL knowingly failed to disclose to the prosecutors before the Preliminary exam or trial that his stepdaughter, Kaneka Jackson, had told him about the shooter and that Plaintiffs were not involved in the murder.  HILL chose not to disclose this exculpatory evidence because Plaintiffs had already been charged with the murder so the case was "cleared" as far as the police were concerned.  The individual defendants knew that absent the fabricated and undisclosed evidence, there was no evidence against Plaintiffs to support probable cause for arrest or continued detention.

**ANSWER: In response to Paragraph 119 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.**

120.     As a direct and proximate result of Defendants' malicious prosecution, Plaintiffs were charged and convicted of crimes they did not commit, causing them to suffer the special injuries and damages set forth above.

**ANSWER:** In response to Paragraph 120 of Plaintiffs' Second Amended Complaint, Defendant can neither admit nor deny as it is without knowledge or information sufficient to form a belief about the truth or falsity of the allegations contained therein.

WHEREFORE Defendant requests that this Court dismiss Plaintiff Clark's demands for money damages and all requested relief, and in turn award attorneys fees in the City's favor, and any other relief this court deems warranted, for defending this lawsuit.

WHEREFORE Defendant requests that this Court dismiss Plaintiff Harrington's demands for money damages and all requested relief, and in turn award attorneys fees in the City's favor, and any other relief this court deems warranted, for defending this lawsuit.

Respectfully submitted,

SCHENK & BRUETSCH, PLC

By:   */s/ David W. Jones*
David W. Jones (P57103)
Lindsey R. Johnson (P67081)
*Counsel for Defendant Inkster*
211 W. Fort, Ste., 1410
Detroit, MI 48226
(313) 774-1000
david.jones@sbdetroit.com

Dated: April 27, 2022    lindsey.johnson@sbdetroit.com

## <u>DEFENDANT CITY'S SPECIAL AND AFFIRMATIVE DEFENSES</u>

NOW COME Defendant City of Inkster ("City" or "Defendant City"), by and through its attorneys, Schenk & Bruetsch, PLC, hereby submit the following Affirmative and other Defenses to Plaintiffs' Second Amended Complaint:

1.     Plaintiffs' Second Amended Complaint fails to state a claim against the Defendant City upon which relief can be granted.

2.     Plaintiffs' claims against Defendant City are barred in whole against the City based on their release and/or waiver of claims against the State and Defendant City in their acceptance of WICA funds from the State of Michigan.

3.     Defendant City was not <u>a</u> proximate cause, or <u>the</u> proximate cause of any harm complained of by Plaintiffs.

4.     That the sole proximate cause, or at least a contributing cause, of the damages and/or injuries complained of by the Plaintiff was based on his own actions, negligence and/or comparative fault.

5.     This action in whole or in part is barred by the statute of limitations.

6.     That the sole proximate cause, or at least a contributing cause, of the damages and/or injuries complained of by the Plaintiff were the negligence and/or comparative fault of third parties.

7.     Plaintiffs rely on fraudulent and false testimony in pursuing this action.

8.      To the extent the Complaint alleges a violation of any section of the Constitution of the United States, Plaintiff fails to state a claim upon which relief may be granted; there is no genuine issue of material fact.

9.      Plaintiffs' injuries were caused by their own illegal conduct.  Plaintiffs are entirely responsible for the cause of any injury for which compensation is sought.

10.     Plaintiffs' arrest and prosecution was supported by probable cause.

11.     Plaintiffs failed to mitigate damages.

12.     Plaintiffs' claims are barred by res judicata and/or collateral estoppel.

13.     Plaintiffs' injuries are the result of the wrongful conduct of others.

14.     Plaintiffs' convictions were set aside by the stipulation of the Wayne County Prosecutor's Office for legal reasons, not due to actual or factual innocence.

15.     That the sole proximate cause, or at least a contributing cause, of the damages and/or injuries complained of by the Plaintiff were due to the actions of Wayne County Prosecutor's Office, which is a necessary non-party at fault.

16.     To the extent the incident/injuries reflected in Plaintiff's Complaint did not occur on the identified date, his claims may be barred by the applicable statute of limitations or the doctrine of laches.

17.     Any injury suffered by Plaintiff was proximately caused by a third party or parties, and/or another agency other than the Defendant City.

18.     That Defendant Officers acted prudently and reasonably and had probable cause.

19.     That Plaintiff has failed to identify any policy or custom of the Defendant City of Inkster that is the cause of any alleged constitutional violation against Plaintiffs.

20.     Plaintiff's claims against Inkster is barred as a matter of law because he has failed to allege that he was arrested or prosecuted pursuant to a municipal policy statement, ordinance, regulation, or decision officially adopted and promulgated or adherence to a governmental custom. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

21.     That notice is hereby given that Defendant City will seek sanctions in this cause of action pursuant to 42 U.S.C. §1983 and §1988 and Federal Rule of Civil Procedure 11.

22.     That Plaintiff's cause of action fails, as there has been no deliberate action by Defendant City that was the moving force behind Plaintiffs' alleged deprivation of federal rights.

23.     Plaintiff's claims are barred, in whole or in part, because the actions alleged against Defendants (which are not admitted), did not occur as a result of official policy, custom or practice.

24.     If Plaintiffs are claiming that Inkster is liable under a theory of *respondeat superior,* such claim is barred by *Monell v. Department of Social Services of the City of New York,* 436 US 658 (1978).

25.     The Plaintiff's Complaint, in whole or in part, may be barred by the applicable statute of limitations or may otherwise be untimely.

26.     Defendant City reserves the right to add, delete, or modify any affirmative defense as additional information becomes available.

Respectfully submitted,

SCHENK & BRUETSCH, PLC

By:     */s/ David W. Jones*
David W. Jones (P57103)
Lindsey R. Johnson (P67081)
*Counsel for Defendant Inkster*
211 W. Fort, Ste., 1410
Detroit, MI 48226
(313) 774-1000
david.jones@sbdetroit.com
Dated: April 27, 2022          lindsey.johnson@sbdetroit.com

## RELIANCE UPON JURY DEMAND

Defendant, City of Inkster hereby relies upon the jury demand asserted by Plaintiffs.

Respectfully submitted,

SCHENK & BRUETSCH, PLC

By:    /s/ David W. Jones
David W. Jones (P57103)
Lindsey R. Johnson (P67081)
*Counsel for Defendant Inkster*
211 W. Fort, Ste., 1410
Detroit, MI 48226
(313) 774-1000/ (313) 774-1717 – Fax
david.jones@sbdetroit.com
Dated: April 27, 2022          lindsey.johnson@sbdetroit.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2022, I electronically filed **Defendant City of Inkster's Answer to Plaintiffs' Second Amended Complaint, Affirmative Defenses, Reliance Upon Jury Demand** and this **Certificate of Service** with the Clerk of the Court using the ECF system which will send notification of such filing and send copy of same to the attorneys of record.

/s/ Samantha A. Wells
Samantha A. Wells