UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE CLARK, *et al.*,

Plaintiffs,

v.

ANTHONY ABDALLAH, *et al.*,

Defendants.

Case No. 21-cv-10001
Honorable Victoria A. Roberts
Magistrate Judge Elizabeth A. Stafford

---

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS ABDALLAH AND SMITHS'S MOTION TO DISMISS PLAINTIFF HARRINGTON'S CLAIMS (ECF NO. 100)**

---

## I.    Introduction

Plaintiffs Kevin Harrington and George Clark sue Defendants Anthony Abdallah, Kevin Smith, City of Inkster, and John Hermann (as personal representative for the Estate of Gregory Hill), for misconduct resulting in their wrongful convictions for the murder of Michael Martin. ECF No. 73.  Abdallah and Smith move to dismiss Harrington's claims as a sanction for his alleged serious discovery abuses.  ECF No. 100. Defendants[1] argue that Harrington provided false and incomplete discovery

---

[1] While Inkster and Hermann remain parties to the action, reference in this R&R to "defendants" includes only Abdallah and Smith.

responses, made false statements during his deposition, and failed to preserve evidence.  The Court **RECOMMENDS**[2] that defendants' motion be **GRANTED**.

## II.    Background

Plaintiffs allege that they were convicted of murdering Martin because of misconduct by defendants, the detectives who investigated the murder. ECF No. 73, PageID.2234-2243.  Defendants allegedly threatened, coerced, and bribed witnesses, and misrepresented and omitted material facts in their reports.  *Id.*  Plaintiffs were convicted and served over 17 years of their life sentences before they were freed in 2020.  *Id.* at PageID.2243, 2246-2247.  They were freed after the prosecution's lead witness linking plaintiffs to the murder later recanted her testimony and newly discovered witnesses came forward with exculpatory statements.  *Id.* at PageID.2244-2246.  Based on the new evidence, the Wayne County Prosecutor dismissed the charges against plaintiffs.  *Id.* at PageID.2246.

---

[2] The Honorable Victoria A. Roberts referred the case to the undersigned for all non-dispositive pretrial proceedings under 28 U.S.C. § 636(b)(1)(A). ECF No. 62.  Because the Court recommends dismissal, it must prepare a report and recommendation under § 636(b)(1)(B).  *See Builders Insulation of Tenn., LLC v. S. Energy Solutions*, No. 17-cv-2668, 2020 WL 265297, at *4-5 (W.D. Tenn. Jan. 17, 2020) (collecting cases).

Plaintiffs allege that defendants violated their constitutional rights by fabricating evidence, maliciously prosecuting them, and failing to disclose exculpatory evidence.  *Id.* at PageID.2250-2254.  They also assert a state-law malicious prosecution claim and a *Monell* claim.  *Id.* at PageID.2254-2256.  Defendants seek dismissal of Harrington's claims, arguing that he lied in discovery responses and deposition testimony, and that he violated stipulated orders compelling complete discovery responses.  ECF No. 100, PageID.2650-2659.

### III.   Analysis

### A.

A district court may sanction plaintiffs with dismissal of their claims for discovery abuses under Federal Rule of Civil Procedure 37 or the court's inherent authority.  *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 933 (6th Cir. 2020); *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011).  To decide whether dismissal is warranted, courts consider the factors:

> 1) whether the disobedient party acted in willful bad faith;
> 2) whether the opposing party suffered prejudice;
> 3) whether the court warned the disobedient party that failure to cooperate could result in a default judgment [or dismissal]; and
> 4) whether less drastic sanctions were imposed or considered.

*KCI*, 801 F. App'x at 934. Although no one factor is dispositive, bad faith is the preeminent consideration. *Id.*; *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008); *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). Dismissal is proper against a plaintiff who has engaged in contumacious conduct, perverse resistance of authority, or stubborn disobedience. *Schafer*, 529 F.3d at 737.

Dismissal as a sanction for discovery abuse is warranted when "no alternative sanction would protect the integrity of the pre-trial procedures." *Buck v. U.S. Dep't of Agriculture, Farmers Home Admin.*, 960 F.2d 603, 608 (6th Cir. 1992); *see also Hino Motors Mfg. USA, Inc. v. Hetman*, No. 20-10031, 2021 WL 6285280, at *4-5 (E.D. Mich. Dec. 14, 2021), *adopted*, 2022 WL 54540 (E.D. Mich. Jan. 5, 2022) (recommending default judgment after warnings of sanctions failed to spur compliance with discovery rules). Although dismissal is a drastic measure, the district court does not abuse its discretion in dismissing a case to punish a party for "egregious conduct and to deter other litigants who might be tempted to make a mockery of the discovery process." *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 378 (6th Cir. 2008).

The Court finds that Harrington's claims should be dismissed.

4

**1.**

As noted, the most important consideration for sanctions under either Rule 37 or the Court's inherent authority is whether a party "acted in willful bad faith." *KCI*, 801 F. App'x at 934; *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 519 (6th Cir. 2002). Courts find willful bad faith when the party "display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Schafer*, 529 F.3d at 737. A party's fraud on the court, such as fabrication of evidence and perjury, shows bad faith and warrants the most severe sanction of dismissal or default judgment. *Hino*, 2021 WL6285280, at *3 (citing *Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F. Supp. 3d 867, 872-873, 878 (E.D. Mich. 2017)).

The evidence shows that Harrington acted in bad faith by providing false and incomplete discovery responses and deposition testimony. As described below, he (1) falsely claimed that individuals referenced in a letter were fictional characters, (2) failed to identify all the businesses he owns, and (3) concealed his social media activity. ECF No. 100, PageID.2650-2659.

**a.**

The first act of discovery abuse requires some context.  In August

2015, the Michigan Department of Corrections (MDOC) intercepted a letter

written by Harrington supposedly outlining a plan for new witnesses to

come forward with statements proving Harrington's innocence.  ECF No.

59-8.  Although the original letter was destroyed, an MDOC official

described the letter:

> Harrington was attempting to devise a plan to allege that he did
> not commit the crime which placed him in prison.  That plan
> consisted of Harrington having individuals claim they were in
> locations that they were not in and did thing[s] that they did not
> do.  In this letter prisoner Harrington states that he is sending
> the diagram of the area of Parkside where "Fester" shot and
> killed Dog, so JT can see it and be all the way on point.  He
> also states, 'Being I going to have D-White walking into
> Parkside from his house on Andover, hearing the shot's [sic],
> then seeing JT speeding from back there.  That's how JT AKA
> Robin will come into play, they will contact her, being D-White
> seen here driven [sic] fast right after hearing the shot's [sic]
> from back there, and then Robin will tell them she seen
> everything, "Fester shot dog etc."  If I don't want to mess with
> D-White, Roach Pop's said he will do it.'

*Id.*  Harrington's reference to "Fester" matches a theory developed by the

Michigan Innocence Clinic that the true culprit of Martin's murder was

Sharrod Miller, also known as "Fester."  ECF No. 45-9, PageID.1054.

Three new witnesses came forward in 2012, 2016, and 2017 with

statements implicating Fester in Martin's murder, leading to dismissal of the

6

charges against Harrington.  ECF No. 45-9, PageID.1056, 1059, 1064-1065. 1067.

For this case, Abdallah served an interrogatory asking Harrington to provide the legal names of the people referenced in the 2015 letter (Fester, Dog, JT, D-White, Robin, Roach, and Roach Pop).  ECF No. 59-9. Harrington did not respond until defense counsel asked him to stipulate to an order compelling a late response.  ECF No. 59-10.  The response identified Fester as Sharrod Miller; D-White as David White, "a man in the neighborhood, deceased"; and the remaining individuals as fictional characters "[m]ade up for [a] script."  ECF No. 100-7.

But defendants produced audio recordings of prison phone calls between Harrington and his brother, Michael Harrington, showing that some of these names refer to real people.  In August 2015, around when Harrington wrote the letter, Michael reminded Harrington of JT by saying that she was "from the hood" and describing her physical appearance.  Call 4 at 9:29-10:06.[3]  On another call, Harrington stated he was "feeling that JT situation" and that he would contact his lawyers.  Call 5 at 10:01-10:25. Harrington also asked Michael to call JT, but Michael responded that she

_____

[3] The call recordings were submitted to the Court in the traditional manner.

would not speak over the phone.  Call 7, 9:45-10:08.  Harrington joked that
JT was "gangster" but said he was "trying to get that shit wrapped up."  *Id.*

  In another call, Harrington reported that "Roach people" said "that's a
go" and that it was "all good" on the "JT tip."  Call 8, 1:52-2:10.  Harrington
then pressed Michael to "holla at JT" because he wanted "to wrap this shit
up before the month of September is over."  *Id.* at 7:45-7:57.  The next day,
Harrington told Michael that Rita, his sister, had some good news that
someone "about that life" and "just like JT" was "on deck."  Call 9, 3:01-
3:18.  Harrington said all he needed was a "two-way" to "wrap this shit up."
*Id.*

  Harrington and Michael's discussions about JT would make little
sense if she were a fictional character.  If JT had been made up for a script,
Harrington would not ask Michael to contact JT or talk to his lawyers about
the "JT situation."

  The calls also show that Roach is a real person.  In one call,
Harrington said that Roach left the prison where Harrington was held and
had taken college courses.  Call 5 at 3:56-3:59, 7:13-7:24.  At other times,
Michael reported that Roach called him, that Roach sent Harrington a
letter, and that Roach was in segregation for getting into a fight.  Call 2,
5:45-6:30; Call 6, 4:30-4:37; Call 26, 5:14-5:20.  Defendants' brief details

many more calls referencing Roach.  ECF No. 100, PageID.2652-2653.
Again, these conversations would make little sense if Roach was a fictional
character.

In his response, Harrington ignores the substance of the calls.  He
instead argues that defendants have not shown that he acted with bad faith
because the alleged scheme to fabricate witness testimony occurred when
he was still in prison.  ECF No. 109, PageID.2828-2831, 2835.  Harrington
tries to distinguish the facts here from those in *Hino*; in that case, this Court
found that the defendant acted in bad faith by lying in discovery responses
and fabricating evidence.  2021 WL 6285280 at *3.  To differentiate *Hino*
from this case, Harrington claims that defendants' motion merely reflects
their unhappiness with one interrogatory answer.  ECF No. 109,
PageID.2835.  But this case mirrors *Hino* in that the evidence shows that
Harrington lied in his discovery responses, including the interrogatory about
the identities of the people described in the 2015 letter.

Harrington also places great weight on his exoneration after an
investigation by the Wayne County Conviction Integrity Unit (CIU).  *Id.* at
PageID.2828.  But defendants contend that the CIU relied on fabricated
evidence.  Harrington cannot rely on his exoneration to support his claims
and at the same time conceal the identity of witnesses who may have

9

participated in a scheme to fabricate the evidence that freed him.  The

Court rejects Harrington's effort to minimize the gravity of his concealment

of witnesses whose testimony would go to the heart of the relevant factual

disputes.

Besides, Harrington has committed acts of bad faith beyond his

dishonest answer to the interrogatory about the identities of people

discussed in the 2015 letter.

**b.**

Defendants also contend that Harrington provided an incomplete

response to a discovery request about his employment history.  ECF No.

100, PageID.2653.  The interrogatory asked Harrington to identify his

employment history though the present, "including self-owned or operated

businesses, by name of the employer and dates of employment."  ECF No.

24-3, PageID.205.  Almost a month after the response deadline, Harrington

responded that he had a part-time job in a university's admissions office.

ECF No. 24-8.  But defendants noted that this response conflicted with

Harrington's deposition testimony that he owned multiple businesses,

including Exchange Kloudzzz and a consulting firm.  ECF No. 33,

PageID.422-423.  And defendants noted that Harrington was listed as the

registered agent for Justice Group Consulting Firm LLC; Drip Factory

10

Clothing Store, LLC; Luxury Key Arcade, LLC; and Luxury Security Teams, LLC.  *Id.*

Since the parties could not resolve the dispute, Judge Roberts directed them to submit a joint letter summarizing their positions.  ECF No. 95-2.  Defendants filed their own statement of unresolved discovery issues and noted Harrington's failure to respond.  ECF No. 33.  Judge Roberts emailed the parties and directed Harrington to submit his response to each discovery issue to avoid sanctions.  ECF No. 95-2.  The parties then stipulated to an order compelling Harrington to provide complete responses.  ECF No. 35.  In the supplemental response that followed, Harrington said this:

> Plaintiff is not employed or receiving income from either Exchange Cloudzzz, a hookah lounge that is not yet open, or the consulting firm Justice Group Consulting Firm, from which he derives no income.  See Harrington dep., pp. 167-69.  As to Drip Factory Clothing Store, LLC; Luxury Key Arcade, LLC; and Luxury Security Team, LLC, these are no[t] yet viable entities, so Mr. Harrington is not employed by them.  They were secured so that Mr. Harrington would have the names of companies if he chose to open future companies.

ECF No. 100-8, PageID.2705.

Contradicting that response, photos and videos on social media show Exchange Kloudzzz filled with patrons.[4]  For the first time in his briefing, Harrington stated that Exchange Kloudzzz LLC is owned by Monae Reynolds, while Harrington is a member of Exchange Kloudzzz Revamp LLC (EKR).  ECF No. 109-9; ECF No. 109-10.  Reynolds formed EKR to expand the original business into the retail space next door, but that the venture never opened.  ECF No. 109-10.  Regardless, Harrington's discovery response was incomplete and evasive, as it failed to correctly identify EKR as the company in which he was involved.

And contrary to Harrington's statement that Luxury Key Arcade LLC was not "viable," Harrington advertised its grand opening on social media.  ECF No. 100-13; ECF No. 100-15.  One photo shows several arcade machines that were "on their way" to the grand opening.  ECF No. 100-13.  Harrington downplays the business, arguing that Luxury Key "made no money" and was just "two arcade machines that pick up prizes via hooks (think Chuckie Cheese-type machines)."  ECF No. 109, PageID.2837.  But another social media post shows that Harrington recently used Luxury Key

---

[4] *See* https://www.instagram.com/exchangekloudzzz/?hl=en (posts dated Oct. 6, 2020, and Nov. 1, 2021).

to rent real estate via Airbnb for $200 to $225 per night.  ECF No. 110-7.

Thus, Luxury Key has done more business than Harrington admits.

Harrington also did not disclose his involvement in a hair extension business.  See ECF No. 100-12.  Harrington again downplays his "investment" in the business, claiming it "went nowhere fast."  ECF No. 109, PageID.2837.  But social media posts show many photos of customers and advertisements for services at prices in the hundreds of dollars.[5]

These examples show that Harrington has not been candid about his business ventures or supplied complete answers to the interrogatory about his employment history, in violation of the stipulated order.

### c.

Defendants also maintain that Harrington failed to disclose social media accounts in response to an interrogatory and lied about his social media accounts during his deposition.  ECF No. 100, PageID.2657-2659.  An interrogatory asked Harrington to identify every social media account he had "ever controlled or otherwise had access to, along with the user or screen name associated with that account."  ECF No. 24-3, PageID.205.  Harrington's failure to respond to discovery and draft a joint letter about

---

[5] See https://www.instagram.com/iislaytierraextensions/?hl=en (posts dated Sept. 18, 2022, January 10, 2022, and October 18, 2021).

unresolved discovery issues is described above.  The parties stipulated to the order compelling Harrington to provide complete responses, and he then produced his social media accounts on a flash drive.  ECF No. 35; ECF No. 100-8, PageID.2706.

But Harrington failed to identify two accounts that were active while he was incarcerated.  ECF No. 100, PageID.2657-2658.[6]  Harrington insists that his family members created and maintained the accounts, as prisoners have no access to social media.  ECF No. 109-8, PageID.2893; ECF No. 109, PageID.2838.  But Harrington's prison JPay messages tell another story.  In many messages, Harrington encouraged friends to visit his Facebook page to help him "run it" and keep him "on point with [his] people."  ECF No. 100-16, PageID.2735-2739, 2742.  In one message, Harrington told a friend he searched for her on Facebook.  *Id.* at PageID.2741.  Harrington also repeatedly asked his nephew to forward his Facebook messages, photos, and friend requests via JPay.  *Id.* at PageID.2744-2747.  While Harrington may not have had direct access to his Facebook account, he did access and control it through his friends and family members.

---

[6] *See* https://www.instagram.com/kdoughsuperstar/ (posts dating from 2015).

Harrington falsely testified during his deposition that he never maintained or had access to social media while he was in prison.  *See* ECF No. 100-20, PageID.2775-2776.  Likely to cover up this falsehood, Harrington failed to disclose the two social media accounts in his discovery response.  Even when confronted with the evidence and defendants' inquiries, Harrington failed to supplement until the Court scheduled a discovery conference on the issue.  ECF No, 95-4; ECF No. 95-6; ECF No. 97, PageID.2618.

Harrington made other false statements about his social media and failed to preserve those accounts.  Early in his deposition, Harrington admitted to posting a video in which he spoke about telling lies.  ECF No. 110-4, PageID.2968-2969.  Defense counsel asked Harrington to preserve his social media pages and not to delete any videos or photos.  *Id.* at PageID.3029.  Later in the deposition, defense counsel noted that the video about lies had been deleted.  *Id.* at PageID.3129-3130.  Harrington denied deleting the video, but he admitted that the video was gone and that no one else had access to his account.  *Id.* at PageID.3130.  Harrington also denied posting another video during his deposition, claiming that he had posted it earlier that morning.  *Id.* at PageID.3131-3132.  But the timestamp of the video showed that it was posted during the deposition, and the video

included a view of Harrington's counsel's office and counsel's voice. *Id.* at PageID.3131-3132.  In sum, Harrington lied about his social media activity and failed to preserve evidence.

The evidence shows that Harrington acted in bad faith.  Defendants proved that Harrington falsely stated that JT and Roach were fictional characters.  Harrington's response to the interrogatory about his employment history was incomplete and evasive, defying a stipulated order.  And he concealed his social media use in prison by failing to disclose two accounts as ordered and falsely stating that he lacked access to social media.  Harrington also lied about his social media use during the deposition and failed to preserve his social media activity.  Harrington's approach to his discovery obligations has been remiss; he has supplied untimely responses, failed to respond to defense counsel's inquiries, and failed to participate in resolving disputes despite Judge Roberts' instruction. When viewed together, this evidence shows that Harrington's discovery violations have been pervasive, deceptive, and likely intentionally obstructive.  *See Hino*, 2021 WL  6285280, at *3 (granting default judgment when defendant lied in his discovery responses and deposition, fabricated evidence, and failed to preserve evidence).  Thus, the first prong of the dismissal analysis is satisfied.

16

**2.**

The prejudice factor also favors dismissal.  "A party is prejudiced when it is unable to secure the information requested and required to waste time, money, and effort in pursuit of cooperation which the opposing party was legally obligated to provide."  *Barron v. Univ. of Mich.*, 613 F. App'x 480, 485 (6th Cir. 2015) (cleaned up).

Defendants have wasted time, money, and effort to uncover critical evidence and compel responses to discovery requests because of Harrington's falsehoods and dilatory tactics.  Defendants have been denied the opportunity to interview or depose the individuals involved in Harrington's alleged scheme to fabricate witness testimony.  They were also denied access to possible social media communications about the alleged scheme.  Harrington argues that his employment history is irrelevant to the case because he does not make a wage loss or loss of earning capacity claim.  ECF No. 109, PageID.2837-2828.  But that information is relevant to show Harrington's post-release adjustment to rebut his claim for noneconomic damages.  ECF No. 100, PageID.2668; ECF No. 110, PageID.2943-2944.  "[I]n cases like this one, where the obstruction prevented the other party from accessing evidence needed" to

defend the case, dismissal is the appropriate sanction.  *Mack*, 270 F. App'x at 378; *see also KCI*, 801 F. App'x at 935.

### 3.

The third factor addresses whether the Court warned Harrington that violations of discovery and court orders could lead to dismissal.  Although an earlier warning is relevant, it is not required when there is evidence of bad faith or contumacious conduct.  *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997); *Hino*, 2021 WL 6285280, at *5.  For the reasons stated, the Court finds that Harrington engaged in bad faith and contumacious conduct, meaning that no earlier warning is required.

And Harrington *was* warned that his disobedience could prompt a dismissal.  In November 2021, Judge Roberts warned Harrington that he would face sanctions if he failed to participate in submitting a joint statement of unresolved discovery issues.  ECF No. 95-2.  In March 2022, Judge Roberts admonished plaintiffs' counsel for failing to respond to a defendants' request for concurrence and warned him that failure to abide by the local rules or the Federal Rules of Civil Procedure "may result in sanctions, up to and including dismissal or judgment."  ECF No. 61.  Harrington discounts this warning, saying that it was issued to all parties.  ECF No. 109, PageID.2840.  But because Harrington was among the

18

parties who were warned, "[n]otice is satisfied." *See KCI*, 801 F. App'x at 936.

**4.**

The last factor—whether lesser sanctions have been imposed or considered—also supports dismissal.  First, when presented with sufficiently egregious conduct, a court need not hesitate to order dismissal as the first and only sanction.  *Harmon*, 110 F.3d at 369.  The Court finds Harrington's conduct warrants the severest sanction.

And no lesser sanction would appropriately punish Harrington.  A monetary award of attorneys' fees and costs "would not fairly compensate [defendants] for the prejudice they suffered, and would do nothing to recover information that could be essential to [their] case at trial." *Mack*, 270 F. App'x at 377.  It is too late for lesser sanctions to remedy the prejudice to defendants; discovery is closed, and the Court stated that no more extensions of the discovery cut-off would be granted.  ECF No. 74.

Thus, dismissal is the only sanction that "would protect the integrity of the pre-trial proceedings." *Buck*, 960 F.2d at 608.  "If unchecked," Harrington's lies and concealment of evidence "would profoundly threaten the integrity and vitality of our judicial system, which rests on a foundation of laws not lies." *Hino*, 2021 WL 6285280 at *5 (cleaned up).

## IV.    Conclusion

The Court **RECOMMENDS** that defendants' motion to dismiss (ECF No. 100) be **GRANTED** and that defendants be ordered to submit a bill of costs.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: October 13, 2022

## <u>NOTICE TO THE PARTIES ABOUT OBJECTIONS</u>

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of

objections, **any non-objecting party must file a response** to the

objections, specifically addressing each issue raised in the objections in the

same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served
upon counsel of record and any unrepresented parties via the Court's ECF
System to their respective email or First-Class U.S. mail addresses
disclosed on the Notice of Electronic Filing on October 13, 2022.


s/Marlena Williams
MARLENA WILLIAMS
Case Manager