UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE CLARK, et al.,

     Plaintiff,

v.

                                    Case No. 21-10001
                                      Honorable Victoria A. Roberts
                                      Magistrate Elizabeth A. Stafford

ANTHONY
ABDALLAH, et al.,

      Defendants.

_____/

**<u>ORDER: (1) SUSTAINING IN PART PLAINTIFF'S OBJECTIONS [ECF NO. 114]; (2) OVERRULING DEFENDANT INKSTER'S OBJECTIONS [ECF NO. 113]; (3) DECLINING TO ADOPT MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF NO. 112]; (4) DENYING DEFENDANTS ABDALLAH AND SMITH'S EX-PARTE MOTION TO FILE SUPPLEMENTAL MATERIALS [ECF NO. 117]; AND (5) DENYING DEFENDANTS' MOTION TO DISMISS [ECF NO. 100]</u>**

## I.    INTRODUCTION

On September 27, 2002, a boy passing out church fliers discovered the body of Michael Martin at the edge of a wooded area in Inkster, Michigan. George Clark and Kevin Harrington were later convicted of Martin's murder. They served over seventeen years in state prison for a crime they say they did not commit.

Their convictions largely resulted from the questionable testimony of Bearia Stewart, an alleged eyewitness who, after being interrogated for

1

hours and denying any knowledge of the crime at least 23 times, eventually implicated Harrington and Clark.

Before Stewart gave a statement to police, the officers sued in this case allegedly threatened her; they told Stewart that if she refused to implicate someone in the murder, she would lose custody of her children. Stewart then told police that on the night of the murder, she saw Harrington and Clark dragging and kicking Martin, beating him with a pipe, and ultimately shooting him.

Although Stewart later recanted her testimony multiple times, a jury still convicted Harrington and Clark of murder.

The two men sue the City of Inkster ("Inkster") and police officers Anthony Abdallah, Kevin Smith, and John Hermann (as personal representative for the Estate of Gregory Hill) under 42 U.S.C. § 1983 for various alleged acts of police misconduct that resulted in wrongful convictions.

Abdallah and Smith move to dismiss Harrington's claims as a sanction for his discovery abuses. Magistrate Judge Elizabeth A. Stafford submitted a report and recommendation ("R&R") [ECF No. 112], recommending that the Court grant the motion.

After *de novo* review of the record, the Court **DECLINES** to adopt the

magistrate judge's R&R. Dismissal is too harsh a sanction under the circumstances for Harrington's discovery violations. The Court also **DENIES** Abdallah and Smith's motion to file supplemental materials [ECF No. 117].

## II.    FACTUAL BACKGROUND

The Court outlines certain facts before turning to a discussion of the magistrate judge's R&R.

### A. Relevant Facts

In 2003, a jury convicted Harrington and Clark of Martin's murder based almost exclusively on Stewart's testimony. The trial court sentenced the two men to life in prison. In 2020, Harrington and Clark were freed after the Wayne County Prosecutor's Office Conviction Integrity Unit dropped all charges. The prosecutor's office declined to retry them.

Harrington and Clark filed this lawsuit, alleging that Defendants violated their constitutional rights by fabricating evidence, maliciously prosecuting them, and withholding exculpatory evidence.  They allege that Defendants threatened, coerced, and bribed witnesses, and misrepresented and omitted material facts in their reports. Harrington and Clark also assert a *Monell* claim against Inkster.

Abdallah and Smith filed a motion to dismiss Harrington's case. They contend Harrington lied in discovery responses and deposition testimony,

and that he violated stipulated orders compelling complete discovery responses. [ECF No. 100, PageID.2650-2659]. (The remainder of this opinion references "Defendants" to include only Abdallah and Smith, the parties who filed this motion.)

Inkster concurred in Defendants' motion. This Court referred it to Magistrate Judge Stafford.

### B. The Magistrate Judge's Report and Recommendation

The R&R recommends that the Court dismiss Harrington's claims against Abdallah and Smith. The magistrate judge reasons that dismissal is warranted because Harrington acted in bad faith by: (1) falsely claiming that individuals he mentioned in a letter were fictional characters, (2) failing to identify all the businesses he owns, and (3) concealing and deleting his social media activity. The R&R concludes that these actions deprived Defendants of an opportunity to conduct meaningful discovery and prejudiced their ability to construct a proper defense.

Because discovery had closed, the magistrate judge concluded that "dismissal is the only sanction that 'would protect the integrity of the pre-trial proceedings.'" [ECF No. 112, PageID.3174] (quoting *Buck v. U.S. Dep't of Agriculture*, *Farmers Home Admin.*, 960 F.2d 603, 608 (6th Cir. 1992)). She did not recommend that the Court dismiss Harrington's claims against

Inkster.

Harrington objects to the R&R. He argues that Defendants did not suffer sufficient prejudice to justify the severe sanction of dismissal. Inkster also objected to the R&R because it did not recommend that Harrington's claims against Inkster be dismissed as well.

### C. Defendants' Motion to File Supplemental Materials

Defendants move to file supplemental materials [ECF No. 117]. They ask the Court to consider a recent news article that allegedly provides further support that Harrington was dishonest in discovery. Material mentioned in the news article raises issues of admissibility. The Court has sufficient material to decide Defendants' motion without the article. Accordingly, Defendants' motion to file supplemental materials is **DENIED**.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b)(3), a district judge must review *de novo* a magistrate judge's report and recommendation on a dispositive motion that has been properly objected to. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court must re-examine all relevant evidence previously reviewed by the magistrate judge to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. *Cole v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 738, 741 (E.D. Mich.

5

2015); 28 U.S.C. § 636(b)(1).

A district court need not conduct a *de novo* review where the objections are "[f]rivolous, conclusive or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir.1986) (citation omitted). Once the review is complete, there is no requirement that the district court articulate every reason it rejects a party's objections. *Tuggle v. Seabold*, 806 F.2d 87, 93 (6th Cir. 1986).

## IV.   ANALYSIS

A district court has broad discretion in choosing whether, and how, to sanction a party for discovery abuses. *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 513 (6th Cir. 2014). The breadth of the court's discretion to select a sanction appropriate to the circumstances reflects the "considerable deference [afforded] to the district court's familiarity with the proceedings." *Bhagwanani v. Brown*, 665 F. App'x. 41, 43 (2d Cir. 2016) (quoting *Friends of Animals, Inc. v. U.S. Surgical Corp.*, 131 F.3d 332, 334 (2d Cir. 1997)).

A district judge must consider four factors in deciding whether dismissal is an appropriate sanction for failure to comply with a discovery obligation:

   (1) whether the party's failure is due to willfulness, bad faith, or fault;
   (2) whether the adversary was prejudiced by the dismissed party's conduct;

(3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and

(4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Mager v. Wisconsin Cent. Ltd.*, 924 F.3d 831, 837 (6th Cir. 2019) (quoting *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002)).

Dismissal is a severe sanction for discovery violation, to be used with great caution. "Dismissal of an action for failure to cooperate in discovery is a sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." *Peltz v. Moretti*, 292 F. App'x 475, 478 (6th Cir. 2008) (internal quotation marks omitted). Further, dismissal is appropriate only when no alternative sanction would protect the integrity of pre-trial procedures. *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 594 (6th Cir. 2001).

While a court may implement dismissal as a sanction if a party engages in contumacious conduct, *Reyes*, 307 F.3d at 458, "justice requires that any sanction imposed be proportionate to the circumstances." *DaimlerChrysler Motors v. Bill Davis Racing, Inc.*, No. CIV.A. 03-72265, 2005 WL 3502172, at *2 (E.D. Mich. Dec. 22, 2005). "Any doubts regarding the use of dismissal as a sanction should be resolved in favor of reaching a decision on the merits." *Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1335 (Fed. Cir. 2009).

The Court now turns to the particular objections and to an examination of each element of the dismissal analysis.

### A. Objection #1: The magistrate judge's finding that Harrington's discovery responses constituted a willful failure to provide discovery was incorrect and an abuse of discretion.

The first prong of the dismissal analysis is whether the party's discovery failure is due to willfulness, bad faith, or fault.

Harrington argues that the magistrate judge improperly acted as factfinder and made credibility determinations reserved for a jury when she concluded that Harrington acted in bad faith. On the other hand, Defendants say that the R&R required no credibility determination because only one logical conclusion—bad faith—could flow from Harrington's conduct.

To show that a party's failure to comply was motivated by bad faith, willfulness, or fault, the conduct must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings. *Mager*, 924 F.3d at 837 (internal quotation marks omitted). A party's fraud on the court, such as fabrication of evidence and perjury, shows bad faith. *Hino Motors Mfg. USA, Inc. v. Hetman*, No. CV 20-10031, 2021 WL 6285280, at *3 (E.D. Mich. Dec. 14, 2021), *report and recommendation adopted*, 2022 WL 54540 (E.D. Mich. Jan. 5, 2022).

The magistrate judge outlined in detail the various forms of fraud she

8

believed Harrington engaged in. *See* [ECF No. 112, PageID.3161-3171]. She said Defendants' evidence establishes that Harrington: (1) lied when he stated that individuals he references as "JT" and "Roach" were fictional characters; (2) gave an incomplete and evasive account of his employment history, although the Court ordered that all parties submit complete responses to all interrogatories; (3) concealed his social media use by failing to disclose two social media accounts; (4) falsely stated under oath that he lacked access to social media (directly or indirectly) while incarcerated; and (5) deleted relevant social media postings although he was required to preserve all accounts. She also concluded that on multiple occasions Harrington supplied untimely responses to Defendants' reasonable discovery requests or failed to respond altogether.

In what was perhaps Harrington's most significant act of bad faith, the magistrate judge concluded that Harrington lied about the identities of unidentified parties "JT" and "Roach." Defendants allege that these individuals were involved in a scheme orchestrated by Harrington to falsify evidence to support his innocence claim. Defendants provided detailed evidence of various prison phone calls Harrington participated in, where he discussed what JT and Roach would say to authorities about what they "saw" on the night of Martin's murder.

When asked in an interrogatory who JT and Roach were, Harrington stated under oath that these individuals were merely the names of fictional characters for a potential movie script.

Defendants' evidence shows that this is a lie. *See* [ECF No. 100, PageID.2646-2647, PageID.2651-2653] (citing various prison calls in which Harrington mentions the names of JT and Roach and discusses them as real people). Harrington clearly violated discovery rules when he lied about JT and Roach's identities.

Harrington persists that JT and Roach are fictional and that, at the heart of it, Defendants simply "are unhappy with Plaintiff's response to one interrogatory answer." [ECF No. 109, PageID.2835]. This characterization of Harrington's discovery abuses is disingenuous at best. More likely than not, Harrington offered vague and evasive responses to thwart defense counsel's efforts to uncover information of questionable value given what must be proved in this litigation. But the magistrate judge aptly states, "[w]hen viewed together, th[e] evidence shows that Harrington's discovery violations have been pervasive, deceptive, and likely intentionally obstructive."  [ECF No. 112, PageID.3171].

The bad faith prong of the dismissal analysis is satisfied. The Court **OVERRULES** Objection #1.

**B. Objection #2: The magistrate judge's finding that Defendants suffered the level of prejudice to justify dismissal is clear error because the issues involved in the disputes are not material to their defenses.**

The second prong of the dismissal analysis is whether the adversary was prejudiced by the dismissed party's conduct.

Defendants say that they were prejudiced because "Harrington's dishonesty . . . leaves Defendants without key witnesses and discovery." [ECF No. 100, PageID.2668]. The magistrate judge agreed. But Harrington says the prejudice prong was not satisfied because the prejudice Defendants' claim to have suffered does not go to the "lynchpin" of this case.

A party's failure or refusal to cooperate with discovery causes prejudice when the requesting party is "unable to secure the information requested" and has "wasted time, money, and effort in pursuit of cooperation which the [other party] was legally obligated to provide." *Norris v. MK Holdings, Inc.*, 734 F. App'x 950, 958 (6th Cir. 2018).

Inkster's sole objection to the R&R is that it should also be dismissed because it was equally prejudiced. Inkster makes no showing of prejudice.

The Court now analyzes both claims of prejudice.

**1. Defendants were not sufficiently prejudiced by Harrington's conduct.**

Harrington blocked Defendants from discovering the identities of JT

and Roach, deleted content from his social media although ordered to preserve his accounts, and withheld information about multiple businesses. Defendants assert that they were prejudiced by this conduct because "Harrington's deception leaves Defendants without powerful evidence that he did murder Michael Martin, and that his damages are minimal." [ECF No. 110, PageID.2945].

Defendants also assert that "[f]ull disclosure of Harrington's businesses and social media minimize [sic] his non-economic damages. Creating and operating businesses shows how adjusted he is post-release, and social media would show lack of emotional or mental issues in prison." [ECF No. 100, PageID.2668-2669]. This argument has merit as far as Harrington's damages are concerned. Because Defendants wasted time, money, and effort to uncover information Harrington was legally obligated to provide, Defendants were prejudiced by Harrington's actions.

But the prejudice to them does not justify dismissal given that what Harrington attempted to conceal does not go to the "lynchpin" of his case. *See Flagg v. City of Detroit*, No. 05-74253, 2011 WL 4634249, at *14 (E.D. Mich. Aug. 3, 2011), *report and recommendation adopted,* No. 05-74253, 2011 WL 4634245 (E.D. Mich. Oct. 5, 2011), *aff'd*, 715 F.3d 165 (6th Cir. 2013).

In *Flagg*, after the plaintiffs filed a discovery motion for preservation of evidence, the district court entered an order directing the defendant to take all necessary steps to preserve the materials identified. *Id.* at *1. When plaintiffs asked defendant to disclose email evidence relevant to the action, defendant responded that the emails were deleted and purged from its electronic storage system. *Id.*

The district court concluded that the defendant "clearly acted culpably and in bad faith" by destroying the emails. *Flagg v. City of Detroit*, No. 05-74253, 2011 WL 4634245, at *6 (E.D. Mich. Oct. 5, 2011), *aff'd*, 715 F.3d 165 (6th Cir. 2013). The court granted plaintiffs' request for the sanction of a permissive adverse inference instruction, but rejected plaintiffs' arguments for a harsher sanction such as default judgment. *Id.* at *8. The court reasoned that while the emails were presumed to be relevant, they were not the lynchpin of plaintiffs' case because the emails were "[un]likely to serve as an especially fertile ground of relevant evidence in support of Plaintiffs' claims." *Id.* Therefore, while it is true that the plaintiffs suffered prejudice, the court reasoned that this factor did not compel the extreme sanction of a default judgment. *Id.*

Harrington's case is similar. Harrington acted in bad faith when he obstructed the discovery process. However, dismissing his case would give

13

Defendants an "undeserved evidentiary windfall," because the prejudice they suffered does not go to the central elements of Harrington's case. *See id.* As the Court discusses below, Defendants fail to show that Harrington's discovery abuses materially hamper their ability to present a defense against any of his claims.

### 2. The elements of Harrington's claims against Defendants

Harrington alleges Defendants: a) fabricated evidence; b) committed *Brady* violations; and c) engaged in malicious prosecution. An assessment of the elements of Harrington's causes of action leads the Court to conclude that the evidence Harrington concealed does not meaningfully prejudice Defendants' ability to defend against the critical elements of any claim. This diminishes any prejudice Defendants suffered.

#### a) Fabrication of Evidence Cause of Action

In his fabrication of evidence claim, Harrington states that "Abdallah and Smith deliberately and knowingly fabricated evidence to manufacture probable cause for an arrest warrant and to later secure Plaintiffs' convictions." [ECF No. 73, PageID.2250-.2251].

A fabrication of evidence claim has two elements: (1) a defendant knowingly fabricated evidence against the plaintiff, and (2) there is a reasonable likelihood that the false evidence could have affected the

14

judgment of the jury. *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017).

Harrington alleges Defendants' compelled Bearia Stewart to falsely implicate him by threatening to take her children from her, and illegally arresting and jailing another individual so she would not appear at trial as an alibi witness. He alleges these fabrications, among other things, are the reasons the jury convicted him of murder.

None of Harrington's discovery violations prejudices Defendants' ability to defend against the claim that they fabricated evidence at the investigation stage. For example, any lie by Harrington about his social media usage while in prison has no bearing on Defendants' ability to defend themselves against the elements of a fabrication claim. Similarly, dishonesty about his life in prison is not related to Harrington's assertions of police misconduct which occurred in 2002-03 while they investigated Martin's murder.

Most vigorously, Defendants contend that Harrington's alleged scheme to fabricate witness testimony to support his release reaches the lynchpin of this case because it shows that Harrington lied about his innocence.

Guilt or innocence is not an element of the cause of action in question, nor is the Court interested in (or at liberty to) retry Michael Martin's murder.

That conviction occurred twenty years ago and was overturned. The Wayne County Prosecutor's Office declined to retry Harrington, and neither will this Court.

Guilt or innocence in a civil trial for police misconduct "is irrelevant and inadmissible and would lead to an impermissible trial-within-a-trial of irrelevant and collateral issues." *Hosse v. Sumner Cnty. Bd. of Educ.*, No. 3:13 C 520, 2018 WL 11471784, at *2 (M.D. Tenn. July 27, 2018) (internal quotation marks omitted), *aff'd*, 776 F. App'x 902 (6th Cir. 2019).

Defendants' argument boils down to this: their ability to defend themselves against claims that they fabricated evidence is prejudiced because Harrington *also* fabricated evidence. This argument is flawed for obvious reasons. Defendants cannot use Harrington's fabrication of evidence as a shield to defend themselves from liability for their own alleged fabrication of evidence.

This lawsuit is not about whether Harrington is guilty or innocent of murder. It is about whether Defendants violated Harrington's constitutional rights by fabricating evidence during their investigation of Harrington. It appears that Harrington has established material facts which support his fabrication claim. The Court finds that Defendants' ability to defend against a claim that they fabricated evidence is not hampered by miscellaneous,

16

unrelated acts of dishonesty on the part of Harrington which occurred years after their alleged fabrication took place. Defendants' fabrication is on trial, not Harrington's.

> b) Federal and State Law Malicious Prosecution Causes of Action

Harrington alleges that Defendants maliciously prosecuted him because their fabricated evidence directly resulted in his wrongful arrest and subsequent conviction. He brings both a federal and state malicious prosecution claim.

A federal malicious prosecution claim contains four elements: (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution at the time plaintiff was prosecuted; (3) the plaintiff suffered a deprivation of liberty; and (4) the criminal proceeding was resolved in the plaintiff's favor. *King v. Harwood*, 852 F.3d 568, 580 (6th Cir. 2017).

Similarly, malicious prosecution under Michigan state law requires: (1) a prosecution caused or continued by one person against another; (2) termination of the proceeding in favor of the person who was prosecuted; (3) absence of probable cause for initiating or continuing the proceeding; and (4) initiating or continuing the proceeding with malice or a primary purpose

other than bringing the offender to justice. *See id.*

Defendants argue that Harrington's alleged scheme to fabricate witness testimony through JT and Roach" implicates their ability to defend against the elements of this claim because the scheme shows that Harrington lied about his innocence, which in turn means that he could not have been maliciously prosecuted. The Court is unpersuaded.

The touchstone of malicious prosecution is not actual guilt or innocence; it is whether there was probable cause to prosecute *at the time of the prosecution*. *See Thompson v. Clark*, 212 L. Ed. 2d 382, 142 S. Ct. 1332, 1337 (2022) ("The gravamen of a Fourth Amendment claim for malicious prosecution is the wrongful initiation of charges without probable cause."). Evidence stumbled upon 20 years after the alleged malicious prosecution took place could never be relevant.

Even if Defendants' evidence that Harrington sought to use manufactured testimony to secure his release from prison supports that Harrington is guilty of murder, this evidence has no bearing on whether Defendants engaged in malicious prosecution *with the evidence they had at the time charges were filed*.  Actual guilt is not an element of malicious prosecution. *See id.* at 1335.

If Harrington was wrongfully prosecuted based on groundless and

unjustifiable evidence, he has a valid claim for malicious prosecution. Every criminal defendant is entitled to the constitutional right to due process. *See* U.S. CONST. AMEND. XIV, § 1. The due process clause affords every defendant the vital guarantee of fair procedure. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). If that process is trampled upon, the government must account for it—regardless of the party's actual guilt or innocence.

Harrington's discovery abuses do not hinder Defendants' ability to defend against malicious prosecution.

### c) *Brady* Violation Cause of Action

Harrington alleges that Defendants violated their *Brady* duty to disclose exculpatory evidence in the underlying criminal case.

A *Brady* violation includes three elements: (1) the evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Doan v. Carter*, 548 F.3d 449, 459 (6th Cir. 2008).

None of Harrington's discovery violations impedes Defendants' ability to defend against a claim that they failed to produce exculpatory evidence. Harrington's discovery abuses have nothing to do with whether Defendants disclosed all the evidence they were legally required to divulge. None of

19

Harrington's discovery violations encumbers Defendants from showing that they did not suppress exculpatory evidence.

> d)  Defendants fail to establish how Harrington's discovery abuses are relevant to liability.

Defendants say that "Harrington's dishonesty . . . leaves [them] without key witnesses and discovery." [Defendants' Motion to Dismiss, ECF No. 100, PageID.2668]. But Defendants fail to establish why the identities of these alleged "key witnesses" would aid their ability to meet proofs.

But although Harrington's discovery abuses are not relevant to establish liability, they may be relevant to damages, *see infra* IV(D)(1) and (2).

The evidence Harrington concealed does not involve an "especially fertile ground of relevant evidence" that would materially benefit Defendants' case. *Flagg*, 2011 WL 4634245 at *8. Defendants were not sufficiently prejudiced by Harrington's actions.

The Court **SUSTAINS** Objection #2.

### 3.  Inkster was not prejudiced by Harrington's actions.

Inkster contends that it was equally prejudiced by Harrington's actions, arguing that the Court should dismiss Harrington's claims against it as well. The Court disagrees. Inkster does not demonstrate how Harrington's

misconduct obstructs its ability to defend against Harrington's *Monell* claim.

*Monell* claims stem from a federal statute authorizing a lawsuit against any person who, under color of law, subjects someone else to the violation of his constitutional rights. 42 U.S.C. § 1983. The "person" may be a city. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("Local governing bodies, therefore, can be sued directly under § 1983 . . .") (footnote omitted).

The Supreme Court recognized, however, that a municipal government is not automatically liable for "an injury inflicted solely by its employees or agents." *Id.* at 694. Instead, the municipality may be liable only if the government itself is to blame for the unconstitutional acts—that is, if it adopted or ratified a policy or custom that caused the harm inflicted by its officers or employees. *Id.*

Proving this requires a plaintiff to "point to a municipal policy or custom and show that it was the moving force behind the constitutional violation." *Crabbs v. Scott*, 800 F. App'x 332, 336 (6th Cir. 2020) (quoting *Monell*, 436 U.S. at 694). A plaintiff may do so by pointing to "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Jones v. Clark County*, 959 F.3d 748, 761 (6th Cir.

2020) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Harrington alleged that Inkster "by and through its final policymakers, had a custom to authorize, condone, tolerate and approve illegal and unconstitutional actions by Inkster police officers and command staff." [ECF No. 73, PageID.2247]. None of Harrington's discovery abuses affects Inkster's ability to defend against this allegation. For instance, Harrington's alleged scheme to fabricate witness testimony has nothing to do with Inkster's alleged illegal practices (e.g., not disciplining detectives known to fabricate evidence; failing to train officers in the proper methods of obtaining evidence). The events surrounding these challenged practices took place over 10 years before Harrington's scheme allegedly began.

Because Harrington's discovery abuses have no bearing on Inkster's ability to defend against a *Monell* claim, Inkster has not shown prejudice.

Inkster also makes no showing that Harrington engaged in fraud, bad faith, or contumacious conduct in Inkster's discovery proceedings. Abdallah and Smith—not Inkster—presented evidence that Harrington "purposefully lied in his deposition, discovery responses, and in direct violation of stipulated orders compelling complete discovery responses." [ECF No. 113, PageID.3178].

22

Inkster cannot merely ride the coattails of Defendants' counsel and expect a dismissal without having investigated or presented evidence that fraud occurred in its own discovery proceedings. *See, e.g.*, *SFEG Corp. v. Blendtec, Inc.*, No. 3:15-0466, 2016 WL 2770661, at *3 (M.D. Tenn. May 13, 2016).

Moreover, Inkster's threadbare statement of concurrence in the relief Defendants requested is insufficient. Its blanket declaration that "Harrington's fraudulent actions . . . prevented ALL defendants from preparing a complete defense," [*id.*] (emphasis in original), without sufficient explanation or evidence as to how, is inadequate. Defendants represented by different attorneys, as is the case here, engage in separate discovery and tailor their approaches to suit their own defenses.

Inkster is not entitled to relief when it failed to supply the Court with evidence supporting that Inkster's independent discovery efforts were hampered or prejudiced by Harrington's actions.

The Court **OVERRULES** Inkster's objection.

## C. Objection #3: The magistrate judge's finding that Harrington was "warned" that specific discovery abuse could lead to dismissal is inaccurate.

The third element of the dismissal analysis requires the Court to assess whether the party was sufficiently warned that dismissal was on the

horizon.

Clear notice of the potential of sanctions is necessary; in this Circuit "routine language in a standard order, warning counsel of possible dismissal as a sanction for failure to comply . . . is not necessarily sufficient prior notice to immediately warrant the extreme sanction of dismissal." *Peltz*, 292 F. App'x at 480.

In his third objection, Harrington argues that the magistrate judge did not give adequate warning that his actions could result in the severe sanction of dismissal given that the warning she relied on was "routine language" instead of a clear admonishment. Defendants say that the warning this Court gave was sufficient to satisfy the warning prong, and that an earlier warning of dismissal is not required when contumacious conduct is present. *Reyes*, 307 F.3d at 458.

Defendants are correct that no warning is necessary if the party engaged in bad faith. However, sanctions must be proportionate, alternatives must be considered, and merits consideration is favored over dismissal.

In balancing Harrington's conduct with the interest of justice, warning was required. *See DaimlerChrysler Motors*, 2005 WL 3502172 at *2 ("[J]ustice requires that any sanction imposed be proportionate to the circumstances."); *Univ. of Pittsburgh*, 569 F.3d at 1335 ("Any doubts

regarding the use of dismissal as a sanction should be resolved in favor of reaching a decision on the merits.").

In November 2021, this judge warned Harrington in an email that he could face sanctions if he failed to participate in submitting a joint statement of unresolved discovery issues:

> To address discovery disputes, the Court required counsel to submit a joint letter. . . . In numerous places [Defendants] state [Harrington's] lack of response to requests and attempts to resolve discovery issues. This failure to participate in submission of a joint letter seems to be the latest example. . . . Please attempt to resolve whatever disputes you can. Then - submit a Joint Statement by the close of business Thursday November 11th in order to avoid sanctions. Thank you.

[ECF No. 95-2]. This was not a warning that dismissal was looming. Given that the Sixth Circuit holds that routine language in an *order* is insufficient to satisfy the warning prong, routine language in an informal *email* falls far shorter.

In early 2022, this judge filed an order granting Defendants' motion to extend scheduling order dates. [ECF No. 61]. The Court admonished Harrington and Clark's attorneys for failing to respond to Defendants' request for concurrence. *Id.* The Court informed all parties in the order that "[f]ailure by any party to abide by the Court's Local Rules, Civility Principles, or any other Federal Rules of Civil Procedure, may result in sanctions, up to and including dismissal or judgment." [ECF No. 61, PageID.2201].

Neither of these warnings presented more than the routine language cautioned against in *Peltz*. Further, the record does not reflect that the magistrate judge gave the parties any warnings after the Court referred discovery disputes to her.

Thus, the only warnings supporting this prong are the Court's boilerplate cautions. Assessing those, neither is sufficient to warrant "the extreme sanction of dismissal," *Peltz*, 292 F. App'x at 480, given that both warnings utilized routine language and were otherwise too general to suffice. The warning prong was not satisfied.

The Court **SUSTAINS** Objection #3.

### D. Objection #4: The magistrate judge failed to appropriately consider whether lesser sanctions would be warranted in this case.

The final prong of the dismissal analysis is whether the Court considered or imposed less drastic sanctions before it ordered dismissal.

In his final objection, Harrington argues that "the magistrate [judge] imposed a sanction . . . more drastic than necessary to accomplish its purpose." [ECF No. 114, PageID.3193]. Defendants say that dismissal is appropriate because Harrington engaged in bad faith and no lesser sanction would protect the integrity of the Court.

Nothing in this record suggests that the magistrate judge imposed or

26

considered any lesser sanction for Harrington's conduct. While lesser sanctions do not need to be considered if the party engaged in contumacious conduct, it is in the best interest of justice for a court to consider less punitive options first.

Given the minor effect Harrington's abuses have on Defendants' defenses, the Court resolves doubts in favor of allowing Harrington's case to move forward towards a decision on the merits.

The Court **SUSTAINS** Objection #4.

The Court imposes the following sanctions.

## 1. The Court will give an adverse inference instruction at trial concerning Harrington's social media misconduct.

Whether "an adverse inference is permissive or mandatory is determined on a case-by-case basis, corresponding in part to the sanctioned party's degree of fault." *Flagg v. City of Detroit*, 715 F.3d 165, 178 (6th Cir. 2013). Considering Harrington's willfulness, the Court believes that an adverse inference instruction is necessary.

Defendants establish that Harrington concealed two of his social media accounts and potentially relevant social media activity even though he was required to disclose and preserve.

An adverse inference permits a factfinder to infer that destroyed or concealed evidence would have been unfavorable to the position of the

27

offending party. *BancorpSouth Bank v. Herter*, 643 F. Supp. 2d 1041, 1060 (W.D. Tenn. 2009) (internal citation omitted). The inference is predicated on the commonsense observation that when a party to an adversarial proceeding destroys or conceals relevant evidence, it is likely done out of fear that the evidence would be harmful to that party. *Id.* Because of the implication that the destroyed evidence would harm the destroying party, the adverse inference serves the remedial function of leveling the playing field after a party has destroyed or withheld relevant evidence. *Id.*

The instruction will inform the jury that Harrington withheld relevant evidence that jurors must presume would harm his case. The jury must weigh this inference in its credibility assessment and determination of the extent of Harrington's alleged emotional distress damages.

### 2. The Court prohibits Harrington from introducing evidence of actual innocence at trial during the liability phase due to his effort to block Defendants from discovering the identities of potentially relevant individuals.

The magistrate judge outlines in detail the events surrounding Harrington's claim that "JT" and "Roach" were fictional characters and Harrington's alleged scheme to fabricate witness testimony. [ECF No. 112, PageID.3160-3165]. Although the Court cannot determine whether Harrington actually engaged in this scheme, it is clear from Defendants' evidence that Harrington lied when he stated during discovery that these

28

individuals were not real people. The Court can sanction Harrington for lying under oath.

Federal Rule of Civil Procedure 37 governs sanctions for various discovery abuses. The court may impose numerous sanctions, including prohibiting the disobedient party from introducing designated matters into evidence. Fed. R. Civ. P. 37(b)(2)(A)(ii).

The Court prohibits Harrington from introducing any claims of actual innocence into evidence to buttress his liability claim. However, if Harrington opens the door by proclaiming innocence, Defendants can bring in evidence of his guilt, even though whether Harrington committed the underlying crime is not the issue in this civil case.

<u>Harrington's Alleged Guilt May Be Relevant to Damages</u>

On the other hand, Harrington's alleged witness-fabrication scheme may be relevant to damages. If Harrington intends to show he was illegally convicted and wrongfully imprisoned for 17 years to buttress his damages claim, Defendants may be allowed to argue actual guilt and Harrington's "scheme" to show innocence. The Court declines to address this question without further briefing.

### 3. The Court prohibits Harrington from arguing lost earning capacity and lost future wages due to his concealed business activity.

Defendants establish that Harrington violated discovery rules by failing to identify all the businesses he owns. Harrington owns multiple establishments, some of which have proven to be successful. Because of his dishonesty, Harrington is prohibited from alleging lost earning capacity or lost future wages in his damages presentation to the jury.

### 4. Defendants are entitled to reasonable attorneys' fees.

Rule 37 of the Federal Rules of Civil Procedure requires that the court order the disobedient party, its attorney, or both to pay "the reasonable expenses, including attorney's fees," caused by the failure to comply with a discovery order, unless the court finds the failure "substantially justified" or that "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Harrington makes no showing that his discovery abuses were substantially justified. Nor does he raise extenuating circumstances that would make an award of expenses unjust. Accordingly, Defendants are entitled to reasonable attorneys' fees for the repeated time and effort they took to get Harrington to cooperate in discovery and the time and effort they engaged in to get Harrington's abuses before the Court, up to and including

responding to his objections.

The Court **ORDERS** Defendants to submit a bill of costs to counsel for Harrington. Harrington and his counsel will have 30 days to pay after receipt. Defendants must file a motion if Harrington and his attorney do not timely pay.

## V.    CONCLUSION

The Court: (1) respectfully declines to adopt the magistrate judge's R&R; (2) **DENIES** Defendants' motion to dismiss Harrington; (3) **DENIES** Defendants' motion to file supplemental materials; and (4) **ORDERS** sanctions against Harrington as discussed above.

Harrington's claims against all defendants will proceed.

 **IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  3/8/2023